KRULL ET AL., APPELLEES, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(No. 2706—Decided December 3, 1940.)

Mr. *W. L. Countryman* and Mr. *Loren W. Dunlap,* for appellees.

Mr. *Thomas J. Herbert,* attorney general, and Mr. *Robert E. Hall,* for appellant.

PHILLIPS, J.   Reference will be made to the parties as they appeared in the court below.

Defendant, the Industrial Commission of Ohio, appeals to this court on questions of law from a judgment of the Court of Common Pleas of Mahoning county entered upon a jury verdict for the plaintiffs in their action on appeal to determine their rights to participate in the workmen's compensation fund of Ohio, as a result of the death of their decedent, William J. Krull.

The evidence discloses that decedent, William J. Krull, a welder by trade, operating in the city of Youngstown, Ohio, under the trade name and style of Harris Sales & Service Company, at his trade and in the sale and repair of acetylene torches and welding equipment, on the nineteenth and twentieth days of May 1938, was engaged by the Carlson Electric Company of the same city, on a basis of one dollar an hour, in making a weld, repairing a leak in the compressor of a Westinghouse air-conditioning unit, refrigerated by a chemical commercially known as "Freon 12," which unit was situated in the basement of a building occupied by the Pennsylvania Power Company in the city of New Castle, Pennsylvania, to

which company the unit had been sold by the Carlson Electric Company, and which the Carlson Electric Company had installed, serviced and was in the act of repairing; that the basement was ventilated by two doors, one window and two fans; that on May eighteenth the unit was dismantled and the chemical refrigerant, "Freon 12," was drained from the condenser of the refrigerating unit into steel tanks, and into a sewer in the basement; that, on the same day, Krull prepared welded material and obtained equipment to do the work in Youngstown, and about noon on the nineteenth day of May started to weld the copper and bronze connections in the compressor by an acetylene torch with a temperature-producing capacity of 6300 degrees Fahrenheit; that Krull worked approximately two hours close to and under the unit and in such a position that it was necessary to use a mirror to see to weld when the unit was reassembled and tested for leaks; that Krull returned to Youngstown on that day in apparent good health; that the next morning he returned to New Castle and, about 6 o'clock, p. m., on May twentieth, after two hours work, completed the welding operation on a part of the unit disconnected from the remainder thereof; that en route to his home in Youngstown Krull became ill and died May thirty-first, as shown by the death certificate and as testified by a doctor who signed the death certificate, of "gas poisoning from fumes of a refrigerator repair," of "some intoxication, some toxemia, some variety of poisoning, the nature of which" the doctor couldn't say; that plaintiffs are the widow and minor children of decedent and were wholly dependent upon him for support at the time of his death; that the Carlson Electric Company, for which he was making the repair at the time of his alleged accidental injury, was amenable and contributing to the Ohio state insurance fund; that subsequent to Krull's death plaintiffs duly filed their application for compensation with defend-

ant, which was disallowed; and that the subsequent necessary procedural steps were taken, and, from a final disallowance of their claim on rehearing, their appeal was perfected to the Court of Common Pleas.

It is the contention of the plaintiffs that Krull's death was directly and proximately caused by a traumatic injury arising out of his employment, as a result of inhaling liberated lethal fumes from the heated chemical, "Freon 12," while engaged in the course of his employment by Carlson Electric Company, and while performing work partly within and partly without the state of Ohio.

Defendant claims that there is no evidence of traumatic injury; that to arrive at the conclusion that decedent died of an accidental injury resulting from inhaling lethal fumes an inference must be based upon an inference; that at the time of the receipt of the alleged accidental injury Krull was an independent contractor engaged in the performance of work wholly without the state of Ohio, and not an employee of an employer amenable to the Workmen's Compensation Act of Ohio; and finally, that it was not shown that the inhalation of lethal fumes was the direct and proximate cause of his death.

Defendant's claimed grounds of error are that the lower court erred in the admission of incompetent evidence offered by plaintiff over defendant's objection; that the court erred in permitting an interrogatory to be returned calling for a combined finding of fact and conclusion of law; that the court erred in refusing to sustain defendant's motion for a directed verdict in its favor; and, finally, that the judgment of the lower court is against the manifest weight of the evidence and contrary to law.

We must decide if a question was presented for the determination of the jury as to whether, at the time of receiving the alleged accidental injury, Krull was an employee of an employer amenable to the Ohio Work-

men's Compensation Act or an independent contractor engaged in the performance of a contract to do specified work in another state, and whether, while thus engaged, he received an accidental injury within the meaning of the act by inhaling lethal fumes from the disintegration of the heated refrigerant chemical, "Freon 12," which directly and proximately caused and produced his death.

The first question in logical sequence to be determined is whether Krull was an employee of the Carlson Electric Company within the meaning of the Ohio Workmen's Compensation Act, or was an independent contractor at the time of receiving the alleged accidental injury. We proceed at once to a determination of that question.

Apparently the test of Krull's status is whether the Carlson Electric Company had the right to exercise control over the means and method of performing the work as well as over the result thereof. See, 21 Ohio Jurisprudence, 623, Section 2.

The president of the Carlson Electric Company testified:

"Why our man, Soderberg, told me that we had a welding job to be done on an installation in New Castle, which was a kind of complicated nature and he wanted to have somebody do it and he said 'who will we have to do it' and I said 'I think we better get Krull' who does that kind of work, and he said, 'How do I get hold of him?' And I said 'I'll get hold of him' and I called him and his phone is listed under the name of Bill Harris, in the telephone book which we had down under the Harris service, and I said 'We got a little job to do in New Castle, can you do it for us?' and he said 'Yes, we can do it for you.' I said 'It's a small job, no use talking any price on it.' I said 'How much will you charge us?' He said 'Well if you can take me down and my tools, why I'll charge you a dollar an

hour' and I said 'O. K., see Soderberg about it and he will make all the arrangements.' "

The secretary and treasurer of the Carlson Electric Company testified that Krull's name was not upon the company's pay roll, but the stub of the voucher, issued to Krull in payment of the work, bore the notation "wages in full for week ending May 20, 1938." In addition, a federal aid security deduction of fourteen cents is in evidence. The secretary and treasurer testified that that was the usual manner and form of issuing such checks, which defendant claims indicates nothing more than the manner in which the books of the Carlson Electric Company were kept and disbursements were made by its bookkeeping department, and constitutes no evidence of probative value of Krull's status as an employee of the Carlson Electric Company.

It is observed that the secretary and treasurer of the Carlson Electric Company filled out the death-report blank and application for workmen's compensation.

There is also evidence that the Carlson Electric Company procured some of the material used in the welding operation, had control of, and the right to control the time, place and manner of doing the work, which was required to be done as directed by its inspector.

The law indulges no presumption that Krull was either an employee of the Carlson Electric Company or an independent contractor, and the burden of proof was upon plaintiffs to show that Krull was an employee thereof by the greater weight of the evidence. If plaintiffs offered some evidence upon which reasonable minds could reach different conclusions as to whether, at the time of the injury, plaintiff was an employee, a question of fact was then presented for the determination of the jury under proper instructions from the court.

Section 871-13(4), General Code, defines an employee as follows:

"The term 'employee,' shall mean and include every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work, or be at any time in any place of employment."

We accordingly can not say as a matter of law that Krull was an independent contractor and not an employee of the Carlson Electric Company at the time of receiving the alleged injury.

Without discussing the evidence on this question at greater length we have concluded that sufficient evidence upon which reasonable minds could reach different conclusions, as to whether Krull was an employee of the Carlson Electric Company, was offered to present, at least, a question of fact for the determination of the jury, which found affirmatively on this issue as evidenced by its general verdict and answer to the special interrogatory, which was consistent, and which read:

"Do you find that the decedent, William J. Krull, was at the time of doing the repair work for the Pennsylvania Power Company an employee of the Carlson Electric Company."

Defendant claims this interrogatory was erroneously admitted because it called for a combined finding of fact and conclusion of law.

We believe the interrogatory submitted presented a mixed question of law and fact, which in this case was at least a question for the determination of the jury, and that the lower court did not commit prejudicial error in submitting the interrogatory to the jury in overruling defendant's motion for a verdict directed in its favor on this phase of the case.

This conclusion compels a discussion and determination of the next question, whether, while thus engaged, Krull received an accidental injury within the meaning

of the Workmen's Compensation Act, which directly and proximately caused and produced his death.

No claim is made that Krull's death was the result of an occupational disease, and time will not be spent unnecessarily discussing that question or citing authorities relative thereto.

"The inhalation by an employee of poisonous fumes, gas, or other harmful elements as a result of unusual conditions connected with the employment or under unusual circumstances, and not as an ordinary or reasonably-to-be-anticipated result of pursuing the work, resulting in disability or death, constitutes a compensable injury under the statute." 42 Ohio Jurisprudence, 649, Section 64.

In our opinion there is sufficient evidence, at least, to present a question for the determination of a jury as to whether Krull inhaled poisonous fumes emanating from the air-conditioning unit on which he was working, caused by a residue of the chemical, "Freon 12," remaining therein, which fumes were formed by the application of heat to the unit. This disposes of defendant's claims that these facts are inferences which must be drawn and built one upon the other to arrive at the conclusion that Krull sustained an accidental injury by inhaling lethal gas fumes. Also, there is evidence of such a conflicting nature as to present a question for the determination of the jury as to whether the allegedly inhaled fumes were poisonous, which likewise disposes of defendant's claim that an inference must be drawn that the gas fumes were poisonous.

One witness testified that "Freon 12" was a harmless chemical composition which when heated emitted a noxious odor and caused a burning sensation in the nostrils. Another witness testified that "Freon 12" completely decomposes into its elements, carbon, chlorine and flourine, at 1400 degrees Fahrenheit, which elements separately are toxic by nature; that flouride

is a very poisonous gas which decomposes at 1022 degrees Fahrenheit, and which if inhaled may be lethal; that the toxic effect and extent of these elements depend upon the conditions existing and amount of air in the room where liberated; and that their toxic effect differs with different individuals, being lethal to some and harmless to others.

This naturally leads to the inquiry as to what, if any, unusual conditions were connected with Krull's employment or under what unusual or unordinary or not reasonably-to-be-anticipated circumstance he pursued his work.

Reference to the record reveals that to accomplish the welding of the leaking air-conditioning unit, it was necessary, during the greater part of the time on the first day, for Krull to use a mirror to see, and it was necessary for him to bend down close to and under the part of the unit upon which he was working, which was situated in a room with no outside ventilation and ventilated only by two small fans situated eight or ten feet away. Krull was not aware or not advised and had no reason to anticipate that all of the "Freon 12" had not been removed from the unit.

In the case of *Industrial Commission* v. *Roth,* 98 Ohio St., 34, 120 N. E., 172, it was held that, where Roth, a common laborer, in obedience to orders from his employer, heated paint in a closed room, preparatory to painting, and inhaled the fumes therefrom, which caused his death, the injury was accidental in nature. See, also, *Industrial Commission* v. *McManigal,* 11 Ohio App., 384; *Industrial Commission* v. *Palmer,* 126 Ohio St., 251, 185 N. E., 66; *Industrial Commission* v. *Tolson,* 37 Ohio App., 282, 174 N. E., 622.

In this particular case, if Krull had known of the presence of the chemical, "Freon 12," in the unit and understood the nature of the fumes he was inhaling and could have foreseen that he would be injured if he

inhaled them, he could easily have escaped all danger by opening the doors and windows of the room in which he was working, and thus have avoided inhaling the fumes.

"Whatever the rule in other jurisdictions may be, the Supreme Court of Ohio, through a long line of decisions, has consistently defined the meaning of the term 'injury,' as used in the Constitution and statutes, to be physical or traumatic injuries accidental in their origin and cause; the result of a sudden happening at a particular time. *Industrial Commission* v. *Franken,* 126 Ohio St., 299, 185 N. E., 199; *Industrial Commission* v. *Lambert,* 126 Ohio St., 501, 186 N. E., 89." *Goodman* v. *Industrial Commission,* 135 Ohio St., 81, 19 N. E. (2d), 508.

The physical or traumatic injury in this case, as testified to by one of plaintiff's physician witnesses, was the "breaking down of the blood structure" and lung tissues resulting from the sudden introduction of a poisonous gas into his body.

Under the Workmen's Compensation Act "things which happen in the course of the employment unexpectedly and without the affirmative act or design of the employee, resulting in injury to him, may safely be said to cause accidental injury." *Ervin* v. *Industrial Commission,* 364 Ill., 56, 4 N. E. (2d), 22.

Plaintiffs' physician-witness testified that the toxic effect of the inhaled fumes was a "breaking down of the blood structure" evidenced by weakness, nausea, loss of appetite, inability to retain food, or lie down, shortness of breath, loss of sight, general skin discoloration, break-down of lung tissue which directly and proximately caused and produced his death.

It was therefore a question for the determination of the jury whether Krull's injury and resultant death were accidental, and the lower court did not err prejudicially to the rights of the defendant on this phase of

the case when it overruled defendant's motion to direct a verdict in its favor.

We come now to a consideration of the question as to whether Krull was engaged in the performance of a contract for a specified piece of work to be performed in another state, no part of which was performed in Ohio. To determine this we must look to the contract, reference to which has already been made.

The rule is that "the Ohio workmen's compensation fund is not available to an employee injured while engaged in the performance of a contract to do specified work in another state, no part whereof is to be performed in Ohio." *Industrial Commission* v. *Gardinio*, 119 Ohio St., 539, 164 N. E., 758.

However, it is well settled that the Ohio Workmen's Compensation Act generally operates extraterritorially, and with certain stated exceptions, compensation is payable to every injured Ohio employee and to the dependents of every Ohio employee killed in the course of employment "wheresoever such injury has occurred." In general, the benefits of the act must be extended to the employees of employers who come within the provisions of the law, regardless of where the injury occurs, if it occurs within the course of employment, otherwise the right of an employee to compensation for injuries incidental to or growing out of his employment would be changed every time he crossed the state line.

"The legislative intent is quite manifest that the provisions of the act shall apply to all those employed within the state, and also where, as incident to their employment, and in the discharge of the duties thereof, they are sent beyond the borders of the state. Undoubtedly an injury received by an employee of an Ohio employer is compensable under the workmen's compensation law, though the injury was actually received in another state, if the service rendered by him in such other state was connected with, or part of, the

duties and service contemplated to be performed in Ohio." *Industrial Commission* v. *Gardinio, supra.*

However, as shown by the contract in the instant case, though Krull was employed in Ohio and was an employee of an Ohio employer contributing and amenable to the Ohio Workmen's Compensation Act, the actual repair work was contemplated to be and was performed by Krull in Pennsylvania and was not a part of the duties and service contemplated to be performed in Ohio, or incident to such employment, nor was Krull sent beyond the borders of this state to discharge work contemplated to be performed in Ohio.

What then is the status of plaintiff's claim to recover under the Ohio act.

Apparently if an Ohio-hired, injured or killed Ohio employee of an Ohio employer amenable to the Ohio Workmen's Compensation Act is required under the terms of the employment contract to perform part of the work in Ohio, though a portion of the work is to be performed in another state, he or his dependents can recover under the Ohio Workmen's Compensation Act, and this we infer from the language used by the Supreme Court in the case of *Industrial Commission* v. *Gardinio, supra,* and from a study of the cases cited by counsel and as a result of independent research.

This brings us forthwith to a consideration of the evidence on this phase of this case. It is remembered that one witness testified:

"Q. Did your father prepare any materials to take to this job at the Carlson Electric? A. Yes, he mixed up some flux the night before he left.

"Q. Did you see him mixing the flux? A. Yes, I was shining some welding equipment at the time.

"Q. Did you take the material with him the following day? A. Yes, I put it in the car the following morning before he left."

Another witness testified:

"Q. I will ask you whether or not Mr. Krull had the

necessary ingredients for the making, manufacturing, or preparation, we will say, of the fluxes which he would from time to time use in welding? A. Yes, he did.

"Q. What did you notice and what did you learn as to his preparation of flux for each particular welding job that he was undertaking? A. That he would go down to the basement and mix it as he needed it.

"Q. And as a result of that conversation what if anything did Mr. Krull do in the way of preparing? A. Why, he went down the basement and prepared flux for the job, and got a burning torch ready, and some rod."

This is evidence we think of such a nature as to present a question for the determination of the jury as to whether any part of the work in which Krull was engaged was performed in Ohio, and in the state of this record this court cannot say as a matter of law that no part of the work was performed in Ohio. Therefore, in our opinion, the lower court did not commit error prejudicial to the rights of defendant when it submitted this testimony to the jury.

There is also evidence to the effect that he prepared and took equipment from Ohio to do the work.

Finally we come to consider defendant's claim that the lower court erred in the admission of incompetent medical evidence, which is claimed to be leading in character and was offered by the plaintiffs over defendant's objection. This contention is based upon the fact that there was no previous evidence that Krull had inhaled lethal gas of any nature or that liberated from the chemical, "Freon 12." Without discussing this evidence in detail we have concluded that the lower court did not commit error prejudicial to the rights of the defendant in this respect. It is true that some of the questions propounded in direct examination were somewhat leading in nature, but they were not such as

to warrant this court reversing the judgment on that ground.

In the hypothetical question, of which defendant complains, the word "suppose" was used instead of the ordinarily used word "assume," and while the words are perhaps not synonymous, yet, in our opinion, no error prejudicial to the rights of defendant occurred by the use of the word suppose instead of assume. We have examined the hypothetical question and find it based upon facts in evidence, and, contrary to defendant's claim, we find that there was previous evidence that Krull had inhaled lethal fumes.

We have carefully considered the evidence in this case and have determined that the verdict of the jury, and the judgment of the lower court entered thereon, can not be disturbed on the ground that they are against the manifest weight of the evidence.

While urging that there are other errors apparent upon the face of the record, defendant has not argued or directed our attention to any, and accordingly we do not pass upon such, even though they may exist.

It follows from what we have said that the judgment of the lower court is not contrary to law, that the lower court did not err in refusing to grant defendant a new trial, and that the judgment of that court must be and hereby is affirmed.

*Judgment affirmed.*

CARTER, J., concurs.

NICHOLS, P. J., concurs in judgment.