Green, Appellee, *v.* Industrial Commission of Ohio, Appellant.

(No. 7102—Decided June 20, 1949.)

*Messrs. Hoover, Beall, Whitman & Eichel,* for appellee.

*Mr. Timothy S. Hogan,* for appellant.

By THE COURT. The appeal here considered is one on questions of law arising by reason of a judgment of the Court of Common Pleas of Hamilton County, predicated upon a verdict awarding compensation to the widow of a deceased employee of the Stacey Brothers Gas & Construction Company, hereinafter called the company.

There is no dispute as to the facts involved. The controversy hinges on the inferences to be drawn from these facts, which the record shows to be as follows: Henry Edgar Green, the decedent employee, was killed while employed by the company in West Virginia. No claim is made that his death was not due to his employment, and the claim of his widow with the Industrial Commission of West Virginia has been allowed, although she, up to the present time, has not accepted compensation for her husband's death. In this connection, it appears that the rate of compensation allowed in West Virginia is lower than that allowed in Ohio, hence the desire of the claimant to receive award of compensation in Ohio.

Counsel asserts, however, that should the judgment of the Common Pleas Court of Hamilton county be sustained, the award of the West Virginia commission will be accepted and credited on the amount to be awarded by the Ohio commission.

The company has adopted a definite course of procedure in the employment of men. It does business in many states. It is engaged in the erection of "gasholders" requiring the employment of more or less skilled workmen. Wherever a job is undertaken, a foreman who is a regular employee of the company

is in charge and is given full power to hire and discharge employees, who are employed for that particular job alone. This arrangement is incorporated in a written contract, signed by the local employee and the company's foreman on the job. In such contracts, it is provided: "Any previous employment with The Stacey Brothers Construction Company is terminated." This is the first line of the contract, and is in the same type as the rest of the contract. The second line of the agreement is: "This is a New Contract of Employment made at —————." On the reverse side of this card constituting the contract of employment is a statement: "This card must be made out in entirety and signed by both parties before employee begins work on any job, whether having worked on any other job or not."

It is clearly apparent that the deceased employee entered into a specific employment in and for the West Virginia job alone.

It appears, however, that he had been similarly employed under similar contracts in Georgia, Iowa and Cincinnati.

The evidence upon which the inference that the employment in West Virginia was under a contract created in Cincinnati is, that the decedent employee's travel expense from Iowa to Cincinnati was paid by the company, and he was allowed travel time from Cincinnati to West Virginia.

The officer of the company testified that often during the recent war, in order to secure efficient employees, their travel expense was paid, or they were allowed travel time in order to induce them to report for work at a job located at a point other than their last employment, and that this was a type of bonus allowed in certain special cases involving efficient workmen.

It further appears that the company was particularly anxious to induce the decedent employee to work on the West Virginia job and that his expenses from Iowa to Cincinnati were paid and travel pay was allowed from Cincinnati to West Virginia, in order that he would be available for the West Virginia job. The company also gave him temporary employment in Cincinnati pending the beginning of work in West Virginia, which did not start until some time after the end of the Iowa job.

If there was any contract involving the West Virginia employment made in Ohio, it must have been made after the decedent employee reached Cincinnati. There is no evidence that such a contract was made. The company officer specifically testified that while it was true that after finishing work in Cincinnati, it allowed the decedent employee travel pay to West Virginia, it was absolutely up to the foreman in West Virginia to employ him or not as he saw fit, and nowhere is there the slightest evidence to the contrary.

It is further stated that while working in Ohio the decedent employee was covered by workmen's compensation insurance in Ohio, and that this was dropped when he left for West Virginia, and workmen's compensation under West Virginia was taken up when the decedent started work in West Virginia.

In the record, it is stated:

"Q. When a job is started in West Virginia are those men who work on that job, are they hired in Cincinnati or are they hired in West Virginia? A. They are hired in West Virginia by that job. That's entirely up to the foreman on the job what men he hires. We don't tell him what men to hire. We tell him 'A man is coming there and if you want a man, why, Green can fill the bill there,' and he goes in there

and he hires for that foreman. If that foreman don't like that man he don't hire him. That's up to that foreman entirely.

"Q. Then your method of hiring is, as these contracts indicated, it's a separate contract of employment at the site where the work is to be performed? A. That's correct."

A careful examination of the entire record fails to show any evidence of a contract made in Ohio between the company and the decedent employee covering the work in West Virginia, and as the death occurred in West Virginia, the compensation cannot be awarded in Ohio. Sections 1465-68, 1465-70, 1465-72 and 1465-90, General Code.

The cases of *Prendergast* v. *Industrial Commission*, 136 Ohio St., 535, 27 N. E. (2d), 235; *Industrial Commission* v. *Gardinio*, 119 Ohio St., 539, 164 N. E., 758; *Krull* v. *Industrial Commission*, 68 Ohio App., 203, 39 N. E. (2d), 883; and *Johnson* v. *Industrial Commission*, 45 Ohio App., 125, 186 N. E., 509, cannot be considered dispositive of the questions here presented, and are not in conflict with the conclusion required by the record that the judgment must be reversed and judgment here entered for the defendant.

*Judgment reversed.*

Ross, P. J., Hildebrant and Matthews, JJ., concur.