270 P.2d 983

**FRANKLIN**

v.

**GEO. P. LIVERMORE, Inc. et al.**

No. 5668.

Supreme Court of New Mexico.

May 21, 1954.

day shift on the same rig as a "roughneck." It is customary for the drillers to employ the "roughnecks" and discharge them when the well is completed. The claimant and other members of the crew lived in Hobbs and traveled back and forth from the rig in an automobile.

On December 13, 1951, the claimant was accidentally injured while working on the rig, which injury disabled him. After claimant's injury, the insurance carrier for the employer voluntarily began making, and the claimant voluntarily accepted, compensation payments as provided for by the Texas Workmen's Compensation Act. These payments continued for a period of fifteen weeks. Thereafter, the claimant filed this suit in New Mexico claiming to be entitled to compensation under the New Mexico Workmen's Compensation Act, which is set forth in §§ 57–901 to 57–932, N.M.S.1941 Anno. The parties agreed that if it was determined that the claimant was entitled to compensation under our Act, he should be paid the sum of $4,250 plus $750 for the services performed by his attorneys in the district court.

From the foregoing facts the trial court concluded that the claimant was entitled to compensation under our Act.

The appellants contend that the claimant is not entitled to compensation for the alleged reason that the relationship of employer and employee, as contemplated by

Edwards & Reese, Hobbs, for appellee.

Neal & Girand, Hobbs, for appellants.

SWOPE, District Judge.

This is a workmen's compensation case. The facts have been stipulated to by the parties. The employer, Geo. P. Livermore, Inc., is a drilling contracting corporation engaged in operating oil well drilling rigs in New Mexico, Texas and other states. Its compensation insurer is Employers Casualty Company. The claimant, Paul R. Franklin, is a resident of Hobbs, New Mexico. Some time prior to December 8, 1951, a driller, who was representing the employer, came to the claimant's home in Hobbs and employed him to work on the night shift on one of its drilling rigs located at a point in Texas about 15 miles from Hobbs and about 7½ miles from the state line. After working about a week, the claimant was discharged. Thereafter, on December 8, 1951, another driller of the employer came to the claimant's residence in Hobbs and employed him to work on the

our Act, never existed in this case. They claim that in order for this relationship to exist in New Mexico the claimant must work for the employer in New Mexico before being assigned to work elsewhere. An examination of our Act reveals that this contention is without merit.

■ Section 57–902 of the Act provides that every corporation in carrying on for the purpose of business, trade or gain within this state, either or any of the extra-hazardous occupations or pursuits, shall pay compensation, as provided by the Act, to any of its workmen for any injuries sustained in such extra-hazardous pursuit. In this case the employer is engaged in an extra-hazardous pursuit in New Mexico, namely, drilling oil wells, as well as in Texas and other states. Section 57–912, provides, in part, that the words "injuries sustained in extra-hazardous occupations or pursuit" as used in the Act, include injuries to workmen occurring while at work *in any place* where their employer's business requires their presence and subjects them to extra-hazardous duties incident thereto. And, § 57–933, which is the extra territorial section of our Act, provides as follows:

"57–933. Employee injured out of the state—Application for compensation.—If an employee who has been hired or is regularly employed in this state received personal injury by ac-

cident arising out of and in the course of such employment outside of this state, he, or his dependents in the case of his injury or death, shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six (6) months after leaving this state, unless prior to the expiration of such six (6) months period the employer has filed with the state labor industrial commission of New Mexico notice that he has elected to extend such coverage a greater period of time.

"The provisions of this section shall not apply to an employee whose departure from this state is caused by a permanent assignment or transfer.

"Any employee injured outside of the state of New Mexico, and coming under the provisions of this section, may file his application for compensation (a) in the county in which his employer's principal place of business is located, or (b) in the county of New Mexico where the contract of hiring was made, or (c) in the county of New Mexico where such employee or his beneficiaries or any of them reside when the suit is brought, or (d) in the county where the employee or employer resided when the contract of hiring

was made, as the one filing suit may elect. (Laws 1949, ch. 14, § 1.)"

It is obvious from reading the above section of our Act that it was the intention of the legislature that any employee hired in New Mexico to work exclusively in another state would be covered by our Act for at least six months after leaving the state as a result of his employment, unless his assignment to work in the other state could be classified as a permanent assignment which caused him to permanently depart from New Mexico. Evidently, the legislature desired to protect resident employees who were assigned by their employers to work outside of the state temporarily. And it has the authority to do this if it so desires. See Alaska Packers Ass'n v. Industrial Accident Comm., 1935, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044.

The same question was presented to the Supreme Court of Utah in the case of Allen v. Industrial Commission, 1946, 110 Utah 328, 172 P.2d 669, 673. In construing their extraterritorial statute, which is similar to ours, that Court said the following, with which we agree:

"* * * It expressly provides for compensation if the employee *has been hired* within this state even though the accident occurs outside of the state. If the words 'has been hired' are to be given their ordinary meaning then all that is necessary to bring a case within the provisions of our statute is that the contract of employment be entered into within this state. The terms of the statute are 'has been hired', indicating a past event and not a continuing relationship, in contrast with the next provision 'is regularly employed' which indicates a continuing relationship within the state. The statute expressly covers not only cases where the status of employment is localized within the state, that is regularly employed here, but also covers cases where the contract of employment has been entered into in the state and the services are to be performed outside the state. If it were intended to cover only cases where the status of employment is localized in the state then the provision that 'an employee who has been hired * * * in this state' would mean nothing in the statute, because all such cases would be covered by the provision that an employee who is regularly employed in this state is covered by the statute.

"The next provision expressly limits to a period of six months the time during which an employee is entitled to compensation under our laws after leaving the state except in cases where the employer elects to extend such period. If an employee was continuously employed outside of the state for a period of six months during

which time he did not enter the state, he could not be regularly employed within this state and so the statute clearly covers cases where the status of employment is not localized within this state, unless by the history of this statute and the purpose of its enactment we are required to give it an unusual meaning."

The Supreme Court of Texas has apparently reached a contrary result in construing their extraterritorial statute. See, Southern Underwriters v. Gallagher, 1940, 135 Tex. 41, 136 S.W.2d 590, and Hale v. Texas Employers' Ins. Ass'n, 1951, 150 Tex. 215, 239 S.W.2d 608. But, it should be noted that the Texas statute does not contain the words, "or is regularly employed in this state."

In the present case, the claimant, a resident of Hobbs, New Mexico, was hired in New Mexico to work in Texas by the employer, a corporation engaged in extra-hazardous pursuits in New Mexico as well as in Texas and other states. This clearly created a relationship of employer and employee under our Act, and when the claimant was injured less than six months later while engaging in the extra-hazardous work in Texas, he was entitled to compensation as provided for by our Act.

■ The appellants also contend that since the claimant was hired in New Mexico to work exclusively in Texas this amounted to a permanent assignment, and

therefore the proviso set forth in the second paragraph of our extraterritorial statute applies. This contention has no merit for two reasons. First, the facts show that the claimant never departed from New Mexico as a result of his employment in Texas and, second, the employment in Texas could hardly be classified as a permanent assignment or transfer. At most, it was just a temporary job. Compare with La Rue v. El Paso Natural Gas Co., 1953, 57 N.M. 93, 254 P.2d 1059, where a claimant was employed on a pipe line construction project running from New Mexico to California and had been living and working on the project in New Mexico, but on the day in question was injured on the New Mexico-Arizona state line while he was being transported by the employer from the end of the pipe line, which had progressed into Arizona that day, to his automobile parked in New Mexico so that he could drive it to his residence in New Mexico, and the Court held, in effect, that since the claimant had not yet departed or moved away from the state as a result of the permanent transfer, he was still covered by our Workmen's Compensation Act.

■ Likewise, there is no merit in the final contention made by the appellants that the claimant waived any rights he had under the New Mexico Compensation Act by accepting compensation payments under the Texas Act. Inasmuch as the payments

354

were made and accepted voluntarily, this would hardly constitute an election on the part of the claimant to pursue his remedy exclusively in Texas. Also see, La Rue v. El Paso Natural Gas Co., supra.

The judgment of the lower court will be affirmed, and the claimant's attorneys will be allowed an additional fee in the sum of $750 for services performed in connection with this appeal.

It is so ordered.

McGHEE, C. J., and COMPTON, LUJAN and SEYMOUR, JJ., concur.