384 P.2d 896

Gene ROAN, for and in behalf of the statutory beneficiaries of Earl Wayne Roan, deceased, Claimant, Plaintiff-Appellee,

v.

D. W. FALLS, INC., Employer, and Commercial Insurance Company of Newark, New Jersey, Insurer, Defendants-Appellants.

No. 7240.

Supreme Court of New Mexico.

Aug. 26, 1963.

MOISE, Justice.

This case requires that we interpret the first two paragraphs of § 59–10–33, N.M. S.A.1953, reading as follows:

"If an employee who has been hired or is regularly employed in this state received personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents in case of his injury or death, shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six (6) months after leaving this state, unless prior to the expiration of such six (6) months period the employer has filed with the state labor industrial commission of New Mexico notice that he has elected to extend such coverage a greater period of time.

"The provisions of this section shall not apply to an employee whose departure from this state is caused by a permanent assignment or transfer."

We proceed to a brief statement of the facts giving rise to the litigation. The defendant employer, D. W. Falls, Inc., a New Mexico corporation, with its principal place of business in Albuquerque, New Mexico, had a contract with the federal government to drill two observation holes near Mercury, Nevada. One Harold B.

Modrall, Seymour, Sperling, Roehl & Harris, Frank H. Allen, Jr., Albuquerque, for appellants.

Bingham & Klecan, Albuquerque, for appellee.

Doty was the superintendent on the job and had complete hiring and firing authority. He maintained an office from which he operated a contracting business of his own at 412 Virginia Street, S. E., Albuquerque. This office was cared for by Mrs. Doty who also made up the payroll and transmitted it to defendant employer at its office in Albuquerque where the pay checks were made out. Shortly before October 15, 1960, Earl Roan went to the office and inquired of Mrs. Doty if her husband "needed some help." Mrs. Doty informed Mr. Roan that she would see if Mr. Doty "needed help" and told him to check back with her. Two or three days later, Mr. Roan checked back and Mrs. Doty told him that she had talked to her husband and that he needed help and had told her "to send Mr. Roan to him." She also told him what the pay scale was. Mr. Roan made his own arrangements for transportation to the job in a car with the wife of one of the other employees, and into which car he helped load some drill bits to be hauled to Nevada. He was paid no compensation for the trip. Upon arriving at the job site Mr. Roan was required to fill out security clearance papers. He was, however, issued a temporary badge and went to work immediately. If for any reason, he had not received security clearance, his employment would have been terminated. Living quarters were provided at the job site. Mr. Roan went to work on October 15, 1960, and worked continuously until some time in December, 1960, when one hole was completed and drilling tools became stuck in the second hole. The crew of which Mr. Roan was a member had no work to do and were accordingly laid off. They could have remained in the living quarters provided at Mercury. Mr. Roan, however, returned to Albuquerque. He drove employer's truck from Mercury to Albuquerque and was paid for 14 hours as a truck driver on December 18 and 19, 1960. After December 19, 1960, and until January 4, 1961, Mr. Roan was not paid for any work for employer, except for December 26 and 27 when he did some work at Mr. Doty's yard in Albuquerque. Some time after January 1, 1961 Mr. Roan received instructions to return to Mercury, Nevada, to work. Mr. Roan and three other workmen drove together from Albuquerque in a truck and a car. After January 4, 1961, Mr. Roan was continuously employed in Nevada until July 1, 1961, when he was killed in a truck accident there while in the course of his employment.

The trial court found that Roan had been hired in New Mexico in the fall of 1960; that he was "re-employed" in New Mexico in January, 1961; that he was not permanently assigned or transferred to Nevada, and concluded that by virtue of § 59–10–33, N.M.S.A.1953, claimants were entitled to the benefits of the New Mexico Workmen's Compensation Act.

■ The defendants assert error by the trial court in making the findings which are

the basis of the court's conclusion that defendants were liable. Accordingly, we are first faced with the question whether Earl Roan was "hired" in New Mexico.

While recognizing that this court in the case of Franklin v. Geo. P. Livermore, Inc., 58 N.M. 349, 270 P.2d 983, stated that "Evidently, the legislature desired to protect resident employees who were assigned by their employers to work outside of the state temporarily," defendants assert that this is not such a situation since deceased was not a resident employee, was not regularly employed in this state, and was not temporarily working outside of the state.

That deceased was not regularly employed by defendant employer in this state is clear. The court found nothing to the contrary. As to whether or not defendant was a "resident employee" is not so clear. The court found that he was "hired" in New Mexico, and if he was, this being the requirement of the statute, he would be a resident employee as that term was used in Franklin v. Geo. P. Livermore, Inc., supra.

Defendants would have us apply a technichal and legalistic concept to the word "hire." They would have us determine where the employment contract was formally made. While they concede that in arriving at this determination the intention of the parties as evidenced by their acts and conduct, the nature of the business, the situation of the parties, and all material facts and circumstances including the place of performance, are to be considered, they assert it is clear that the contract of employment of Roan was entered into at the test site near Mercury, Nevada. They base their conclusions on the fact Roan was not put on the payroll until he arrived on the job; he was given no travel expenses and he had to arrange his own transportation; he was hired only for the one job; he was provided living quarters at the place where the work was to be performed; he had to have a security clearance to be regularly employed, and there was no acceptance of any offer of employment so as to make a binding contract until deceased arrived in Nevada at the job.

We are not convinced. We see no substantial difference in the facts here present and those considered in Franklin v. Geo. P. Livermore, Inc., supra. In that case the claimant was a resident of Hobbs, New Mexico. A driller representing the employer came to claimant's home in Hobbs and "employed" him to work the night shift on a drilling rig in Texas. After a week he was discharged. Thereafter, another driller came to claimant's home and "employed" him to work the day shift on the same well. While the report of the case does not disclose what was involved in the "employing" it appears that it was customary for the drillers to hire and fire "roughnecks." The claimant, together with other members of the crew, traveled back and forth from the rig in an automobile.

To our minds Earl Roan was just as certainly "employed" in Albuquerque, by Mrs. Doty, acting for her husband, after having verified that he needed help, as was claimant in Franklin v. Geo. P. Livermore, Inc., supra. If Franklin had not reported to the job in Texas after the employment he would not have been paid, just as was true of Roan. No transportation was supplied or paid by the employer so far as the report discloses. That Roan had to have a security clearance was not a condition to his employment inasmuch as it appears he went to work immediately subject to being discharged if he was not cleared.

◼ We would give to the acts and words of the parties such meaning as reasonable persons would give to them under all the facts and circumstances present. Gomez v. Federal Stevedoring Co., 5 N.J. Super. 100, 68 A.2d 482; Pavlantos v. Garoufalis, 10 Cir., 89 F.2d 203. No formality is required to accomplish an effective hiring. Words or conduct may be sufficient to accomplish the same. Pfister v. Doon Electric Co., 199 Iowa 548, 202 N.W. 371.

We are satisfied that the finding of the trial court that Earl Roan was hired in New Mexico is supported by substantial evidence and is in accord with the legislative intent expressed in § 59–10–33, N.M.S.A.1953, as interpreted in Franklin v. Geo. P. Livermore, Inc., supra.

The defendants cite cases in support of their position. They strongly rely on Ray-Hof Agencies, Inc. v. Petersen (Fla.1960), 123 So.2d 251; Cobb v. International Paper Company (La.App.1954), 76 So.2d 460, and Green v. Industrial Commission, 86 Ohio App. 356, 91 N.E.2d 815. These cases are all distinguishable on their facts. However, we consider ourselves controlled by Franklin v. Geo. P. Livermore, Inc., supra. There are numerous cases to the same effect. Gomez v. Federal Stevedoring Co., Inc., supra; Bowers v. American Bridge Co., 43 N.J.Super. 48, 127 A.2d 580, aff'd 24 N.J. 390, 132 A.2d 28; Globe Cotton Oil Mills v. Industrial Accident Commission, 64 Cal.App. 307, 221 P. 658; Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S.W.2d 1036; Allen v. Industrial Commission, 110 Utah 328, 172 P.2d 669.

◼ On the question of the employment of decedent to work in Nevada as a permanent assignment or transfer, Franklin v. Geo. P. Livermore, Inc., supra, is also determinative against defendants. The work in Nevada was just a temporary job. Although here decedent did leave the State of New Mexico for several months at a time, whereas in Franklin he returned home each night; we do not consider this to be controlling in the light of the fact that his employment was for a particular job which could not be classed as permanent employment. That the job was not permanent is well demonstrated by the layoff without pay in December, 1960 and return to Albuquerque, during which time decedent sought

other employment and did work two days for which he received pay from the defendant employer. The court's finding that the deceased was not in Nevada on a permanent assignment or transfer is supported by substantial evidence.

■ There remains the question of whether decedent was reemployed by defendant employer in January, 1961, as found by the court, or if not, whether the injuries causing his death occurred "within six months after leaving this state," this being the time period during which extra territorial coverage is provided by § 59–10–33, N.M.S.A.1953, unless employer has filed notice of election to extend the period.

There can be no question that decedent returned to Albuquerque in December, 1960, as part of his employment. He was paid for driving a truck. Similarly, there is no question that after his return he was not paid for any work done for defendant employer except for two days as a laborer at the yard in Albuquerque. It was some time after January 1 when he returned to Nevada—his first work for which he received pay being on January 4. His injuries resulting in death occurred on July 1, less than six months after he left New Mexico to return to work.

We do not find it necessary to decide if the temporary layoff from December 19, 1960 to January 14, 1961 amounted to a termination and rehiring. That it might be so considered is undoubtedly true. See International Association of Machinists v. State ex rel. Watson, 153 Fla. 672, 15 So. 2d 485, where a "lay-off" was classified as a "labor separation." The proof that decedent returned to New Mexico in December, 1960, as part of his duties for his employer; that he worked two days while here for which he was paid and then returned to Nevada after January 1, 1961 clearly establishes that he left the state within six months of July 1, 1961, the date on which he received the injuries resulting in his death.

Kutt v. Beaumont Birch Co., 177 Pa. Super. 352, 110 A.2d 816, relied on by defendants, denying recovery in Pennsylvania to a workman employed in New Jersey whose only return to Pennsylvania was for "reasons entirely personal to him" is in no way similar to the facts here. While the return of decedent here was just before Christmas and defendants assert that it was for his own personal reasons, the proof recounted above clearly demonstrates that such was not the case. The fact that living quarters were available at Mercury and that the workmen could have stayed there during the layoff is beside the point. Whether decedent could have refused to drive the truck back to Albuquerque in December, 1960 does not appear. It is sufficient that as part of his employment he did so. Compare Morrison v. Vance, 157 Pa.Super. 244, 42 A.2d 195.

**470**

Having determined the points raised and argued by defendant to be without merit, it follows that the judgment should be affirmed. An attorney fee in the amount of $500.00 shall be paid by defendant employer for the services of claimant's attorney in this court.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.