791 P.2d 71 (1990)
108 N.M. 796
Brenda Lynn ORCUTT, Claimant-Appellant,
v.
S & L PAINT CONTRACTORS, LTD., and Aetna Casualty & Surety, Respondents-Appellees.
No. 11032.
Court of Appeals of New Mexico.
March 20, 1990.
*72 Stacey A. Johnson, Phyllis Oman Bowman, Stacey A. Johnson, P.A., Albuquerque, for claimant-appellant.
Julie W. Brown, Beall, Pelton, O'Brien & Brown, Albuquerque, for respondents-appellees.

OPINION
APODACA, Judge.
Claimant Brenda Orcutt (worker) appeals the workers' compensation judge's (judge) denial of her claim under NMSA 1978, Section 52-1-64 (Repl.Pamp. 1987) of the Workers' Compensation Act (the Act), based on an out-of-state injury. Worker, a New Mexico resident, was injured in Nevada while working for respondent S & L Paint Contractors, Ltd. (employer). Determining that worker's "contract of hire" was made in Nevada and not in New Mexico, the judge concluded that worker did not meet the extraterritorial coverage requirements under Section 52-1-64 and was thus not entitled to benefits under the Act. We agree with the judge's determination and affirm the denial of coverage.
On appeal, worker raises three issues. She argues that the judge erred in: (1) concluding that worker did not meet the "contract of hire" requirements under Section 52-1-64; (2) failing to give full faith and credit to certain "findings and conclusions" of a workers' compensation agency in Nevada concerning the place of hire; and (3) failing to conclude that employer was estopped from denying coverage under the Act by representing to worker and a Nevada hospital after the injury that employer would provide coverage for medical expenses incurred for treatment.

BACKGROUND
Worker was injured while working for employer, which was in the business of repairing and painting heavy equipment for sale at auctions. Ken Clark (Clark), employer's owner, was a New Mexico resident. Although employer transacted business in New Mexico, its primary place of business was located in Iowa. Employer's employees traveled interstate to different job sites.
Employer contracted for a job in Las Vegas. Clark telephoned and hired worker's husband in Albuquerque, New Mexico, for the Nevada job. Worker and her husband were New Mexico residents. During the telephone conversation with the husband, Clark also offered employment to worker. Because he did not want worker to work, worker's husband did not relay the offer to her. After worker and her husband arrived in Nevada, Clark directly offered worker a job. Before the Nevada offer, worker had not talked to employer about a job.
Worker accepted the offer and began work. She worked for about three hours before falling from a dump truck she was preparing for painting. She injured her back and ankle. As a result of the work-related injury, worker incurred $4,623.60 in medical expenses. She applied for workers' compensation benefits in Nevada. The Nevada agency denied coverage, concluding that worker was an out-of-state employee only temporarily in the state and that employer had failed to obtain coverage there.

DISCUSSION
Section 52-1-64 provides:
If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he * * * would have been entitled to the benefits provided by the [Act], had such injury occurred within this state, such employee * * * shall be entitled to [such] benefits * * * provided that at the time of such injury:
A. his employment is principally localized in this state;
B. he is working under a contract of hire made in this state in employment not principally localized in any state;
C. he is working under a contract of hire made in this state in employment principally localized in another state *73 whose workmen's compensation law is not applicable to his employer, or

D. he is working under a contract of hire made in this state for employment outside the United States and Canada. [Emphasis added.]
Under the statute, unless a worker's employment is principally localized in New Mexico, which neither party contends was the case in this appeal, it is a prerequisite that the contract of hire be made in this state before a worker is entitled to benefits.
State Where Contract of Hire Was Made
In enacting Section 52-1-64, the New Mexico legislature statutorily adopted the "place-of-contract or place-of-hiring test." See generally 4 A. Larson, Larson's Workmen's Compensation Law § 87.31 (1989). Under this theory, the place where the employment contract was made is determinative of coverage. Although the theory has led to unsatisfactory and even contradictory results, according to Larson's, it has become established as a common test of coverage. Id.
In construing a statute, a reviewing court's central concern is to determine and give effect to the intent of the legislature. Smith Mach. Corp. v. Hesston, Inc., 102 N.M. 245, 694 P.2d 501 (1985). In determining this intent, we look primarily to the language used in the statute. See First Nat'l Bank of Santa Fe v. Southwest Yacht & Marine Supply Corp., 101 N.M. 431, 684 P.2d 517 (1984). This court must give the words used in the statute their ordinary meaning unless the legislature indicates a different intent. State v. Rodriguez, 101 N.M. 192, 679 P.2d 1290 (Ct.App. 1984). Unreasonable or strained statutory constructions are proscribed. Anaya v. New Mexico Steel Erectors, Inc., 94 N.M. 370, 610 P.2d 1199 (1980).
Section 52-1-64 is not ambiguous. New Mexico can provide extraterritorial coverage only if the employment is "localized" here or the "contract of hire" was formed in the state. The plain language of a statute is the primary indicator of legislative intent. General Motors Acceptance Corp. v. Anaya, 103 N.M. 72, 703 P.2d 169 (1985).
The place-of-contract test depends on the technical formalities present with respect to elements required for contract formation. 4 A. Larson, supra, at § 87.34. The manifestation of mutual assent to an exchange ordinarily takes the form of an offer by one party followed by an acceptance by the other party. Restatement of Contracts (Second) § 22 at 66 (1981). It is elementary in contract law that mutual assent ordinarily must be expressed by parties to an agreement before a contract is made. Trujillo v. Glen Falls, Inc., 88 N.M. 279, 540 P.2d 209 (1975). Since an acceptance is required to make a binding contract, the geographical place where the acceptance is given will control the location of the formation of the contract. See U.S. Steel Corp., Gary Works v. Industrial Comm'n, 161 Ill. App.3d 437, 109 Ill.Dec. 584, 510 N.E.2d 452 (1987).
The rule is that an offer becomes a binding promise and results in a contract only when it is accepted. McCoy v. Alsup, 94 N.M. 255, 609 P.2d 337 (Ct.App. 1980). A proposal by an offeror is not effective and is not an "offer" until it is made known to the other party, who is then in the position to accept or reject the offer. Foster v. Udall, 335 F.2d 828 (10th Cir.1964). In the formation of a contract, an offeror is entitled to know in clear terms whether the offeree accepts his proposal. Ross v. Ringsby, 94 N.M. 614, 614 P.2d 26 (Ct.App. 1980). An offeree's acceptance must be clear, positive, and unambiguous in order to result in a binding contract. Tatsch v. Hamilton-Erickson Mfg. Co., 76 N.M. 729, 418 P.2d 187 (1966).
Acceptance of an offer is a manifestation of assent to the terms of the offeree in a manner invited or required by the offer. Restatement of Contracts (Second) § 50 (1981). Acceptance may be by performance or by promise. See id. In an employment contract, an employer's offer may create a power to accept by performance. Corbin on Contracts § 65 at 271 *74 (1963). The employee may be fully authorized by the employer's proposal to proceed with performance without any further assent by the employer. Id. If this is so, the employee has the power to accept by action rather than words. Id. Thus, an employment contract may arise when an employer authorizes a prospective employee to accept an offer of employment by rendering services.
In the present case, the evidence is undisputed that worker did not find out about the offer until she arrived in Nevada. From her testimony, it appears that worker went to Nevada only to accompany her husband. Her plans were "to walk around" during the day. Since she was not going to be employed by employer, her husband had agreed to pay employer for half of the motel room. Employer did not pay worker any travel expenses. She was not regularly employed by employer in New Mexico. In fact, worker had never worked for employer before. There was no evidence supporting an inference that worker's travel to Nevada was an act of "acceptance" to a known job offer made by employer in New Mexico. It seems clear that, whether the contract of hire is classified as unilateral or bilateral, it was formed, as a matter of law, in Nevada.
As applied to the facts of this appeal, case law dictates that both the offer and its acceptance took place in Nevada. Worker admits that no offer of employment was made by employer directly to her while she was in New Mexico, nor did she accept any offer of employment while in New Mexico. Worker first knew of her opportunity to work for employer after she arrived in Nevada and it was there that she accepted the offer.
The cases relied on by worker fail to support her argument. In Franklin v. Geo. P. Livermore, Inc., 58 N.M. 349, 270 P.2d 983 (1954), the court never addressed the issue of where the employee was hired. The court merely accepted the apparently undisputed fact that the employee was hired in New Mexico.
In Roan v. D.W. Falls, Inc., 72 N.M. 464, 384 P.2d 896 (1963), on facts much different from those in this appeal, the court held that, rather than determining where the employment contract was formally made, it was satisfied there was "substantial evidence" that the employee was hired in New Mexico. Similarly, in Reed v. Fish Engineering Corp., 74 N.M. 45, 390 P.2d 283 (1964), the court was not required to rule on the question of where a party was hired.
Although the purpose of the Act in New Mexico is to provide a humanitarian and economical system for compensating injured workers, unreasonable or strained constructions are proscribed. Anaya v. New Mexico Steel Erectors, Inc. "If specific guidance cannot be gleaned from the text of the Act, fundamental fairness to both parties is the guideline. These maxims do not mean a total disregard for the Workmen's Compensation Act or a repeal of it under the guise of construction." Id., 94 N.M. at 372, 610 P.2d at 1201 (citations omitted).
We believe the interpretation requested by worker would lead to strained, impractical or absurd results. Although we note that public policy encourages coverage under workers' compensation principles, we are bound by the statutory provisions of the Act and cannot provide a remedy that is not specifically included in the statute. See Williams v. Amax Chem. Corp., 104 N.M. 293, 720 P.2d 1234 (1986).

Full Faith and Credit
Full faith and credit applies to final judgments of sister states. U.S. Const. art. IV, § 1. The United States Constitution requires each state to recognize the legislative acts, public records and judicial decisions of other states. See id. A judgment of record has the same conclusive effect and obligatory force in other states as it has by law or usage in the state of origin. Christmas v. Russell, 72 U.S. (5 Wall.) 290, 18 L.Ed. 475 (1866). Full faith and credit principles, however, as worker would have us apply them, are not germane to the issue presented to us.
*75 Worker argues that full faith and credit should apply to the Nevada determination that "[worker] was an out of state employee and temporarily within the state." Employer counters that no "administrative or judicial hearings were held in Nevada, [thus] there is [no] judgment or decision to even consider." Even if we accept worker's argument that the Nevada agency's findings and conclusions were entitled to full faith and credit, worker cannot prevail on this issue for the following reasons.
Essentially, worker reasons that, although the Nevada agency did not directly address the question of where the contract of hire was made, nevertheless the effect of the ruling was to deny benefits to worker, which she now requests this court to remedy under color of full faith and credit. Worker specifically argues that, due to Nevada's determination, worker "is in danger of falling down a `crack' created by discrepancies in the wording of the Nevada [ruling that] made no specific determination of where the contract for hire was made and a strict contract law interpretation of [our statute]." (Emphasis in original.)
We have already noted that the dispositive issue in this case is where "the contract of hire" was made. Because only Nevada and New Mexico had any connection with worker's employment, it follows that the contract had to be formed in one of those two states. However, the Nevada agency did not determine where the "contract of hire" was made, as worker urges us to hold. The agency only concluded that, under Nevada law, worker "was an out of state employee and temporarily within the state." This conclusion was in fact adopted by the judge in New Mexico. Thus, in effect, it was given full faith and credit. The fact that the judge recognized Nevada's specific determination, however, did not preclude him from making his own determination that the contract was made in Nevada. This determination did not conflict with Nevada's conclusion that worker "was an out of state employee and temporarily within the state."
This court is not at liberty to broaden the specific and limited determination made in Nevada, even under full faith and credit principles. We cannot do so even to assure that worker does not fall down a "crack" of the two states' different laws, as worker describes her dilemma. We are unable to help worker in her predicament. Instead, we are confined to construing this state's statutory provisions based on construction principles previously discussed, not based on a misapplication of full faith and credit principles to insure worker is provided workers' compensation benefits.

Estoppel of Employer
Lastly, worker argues that employer should be estopped from denying workers' compensation benefits because of Clark's representations to worker and the hospital, made to secure worker's admission as a patient. Clark secured admission to the hospital for claimant by representing to her and the hospital that he would provide full coverage for medical expenses. Nothing was said regarding workers' compensation coverage. First, we find no workers' compensation statute or any New Mexico case authority supporting worker's estoppel argument. Even if such authority existed, however, the facts do not support a theory that employer is estopped from denying coverage under the Act. See 2 A. Larson, § 67.10.
For estoppel to apply, it must be shown that worker knew or heard of the coverage and that such knowledge induced her to accept the employment or to take any action or position in reliance upon it which she would not have taken otherwise. Garrison v. Bonfield, 57 N.M. 533, 260 P.2d 718 (1953) (quoting Keeney v. Beasman, 169 Md. 582, 182 A. 566 (1936)). There was no evidence that worker relied on any previous representation by Clark to either accept employment or change her position in any significant way. Clark's representation after the accident did not meet any of the required elements for estoppel, especially since he did not specifically represent there was workers' compensation coverage.
In this appeal, the judge not only admitted but apparently considered the testimony regarding Clark's assurances to worker *76 and the hospital. In making these assurances, Clark could have been referring to methods of payment, including direct payment by employer, rather than specifically guaranteeing that workers' compensation benefits were available. Thus, the facts in this record do not support a claim that employer should be estopped from denying the existence of workers' compensation coverage. To the extent worker intended to argue that she was entitled to a recovery at common law, that issue is not before us.
Our task here is not to determine whether worker may have a common law cause of action based on estoppel against employer. Even if employer's assurances could be said to have afforded worker or even the hospital a cause of action against employer under other theories unrelated to workers' compensation, they were not sufficient grounds on which to permit benefits under the statute. We are compelled to follow the clear language of the statute.
Worker's reliance on Romero v. Mervyn's, 106 N.M. 389, 744 P.2d 164 (1987) is misplaced. In Romero, the trial court entered summary judgment in favor of the defendant, after having disallowed testimony of a statement made by the defendant's employee with respect to payment of the plaintiff's medical bills. Romero, in reversing the summary judgment, concluded that the trial court had improperly ruled on a disputed factual issue that should have been decided by the jury. The court held that the issue of an agent's actual or apparent authority is usually one of fact. Romero is thus distinguishable. It dealt with a claim to a common law remedy. See also Romero v. Mervyn's, 109 N.M. 249, 784 P.2d 992 (1989).

CONCLUSION
In summary, we hold that, because worker's contract of hire was not made in New Mexico, she did not meet the coverage requirements of Section 52-1-64, and thus was not entitled to workers' compensation benefits. We hold further that the judge did not err in failing to give full faith and credit to the Nevada agency's adjudication or in failing to conclude that employer was estopped from denying coverage. We therefore affirm the judge's order denying worker's claim for benefits.
IT IS SO ORDERED.
BIVINS, C.J., and MINZNER, J., concur.