612 P.2d 234

**Maria CHAVEZ, Plaintiff-Appellant,**

v.

**Jeanette G. RONQUILLO, Administratrix of the Estate of Nolasco Ronquillo and Galles Chevrolet, a New Mexico Corporation, Defendants-Appellees.**

**No. 4402.**

Court of Appeals of New Mexico.

May 20, 1980.

Motion to Reconsider Denied May 28, 1980.

Stephen Durkovich, Albuquerque, for plaintiff-appellant.

Rick Beitler, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Summary judgment was granted Galles Chevrolet Center, Inc. in an action brought by plaintiff growing out of a single vehicular accident in which a Galles car driven by decedent, its used car salesman, in which plaintiff was a passenger, sped over a highway and smashed into a tree. Plaintiff appeals. We affirm.

The only issue on this appeal is whether Nolasco R. Ronquillo, deceased, the used car salesman, was operating the Galles car within the scope of his employment.

The record shows:

Decedent was employed by Galles as a used car salesman. His official hours of employment were during the morning shift that ended at 1:00 P.M. Decedent was allowed the use of a Galles car to drive to and from home to his place of employment.

On April 30, 1976, decedent was officially off duty at 1:00 p. m. He signed out at 1:00 p. m. That meant that he had the car to go home with, not to demonstrate for purposes of sale. He had no authority to drive the demonstration car out of the city. The policy and procedure of Galles with reference to company owned vehicles being driven by the sales department included "Prospecting." When decedent left his shift with Galles, he was not instructed to do anything to further Galles' business, that is, to take a car and go prospecting. There was no indication that he would do that.

Decedent was a salesman with a quota per month. He was not a buyer of cars. A salesman very rarely brought in leads on used car purchases. If a salesman knew of a car for sale, he would bring the information to the manager and if the price was right, the manager would buy it. Decedent could use the car to pursue Galles' business.

After leaving his shift, decedent remained on the premises until about 2:30 p. m. At about 6:15 p. m. that evening, while operating a Galles car with plaintiff as a passenger, decedent drove south on U.S. Highway 85 at the rate of 100 mph while intoxicated. At a right turn in the road, at about $\frac{9}{10}$ths of a mile north of its junction with Fourth Street, decedent careened straight ahead over the highway through a barbed wire fence into a large tree and was killed. Plaintiff was injured.

At the time of the accident decedent and plaintiff were returning from Santa Fe and were together for social reasons and not for reasons connected with or arising out of employment with Galles. Decedent had known plaintiff since 1971 and frequently accompanied her for social reasons.

Galles established a prima facie case of non-liability.

Plaintiff responded by affidavit:

In April of 1976, she had lived in Albuquerque for about six months, had been employed most of the time, but was unemployed at the time of the accident. In order to support herself, she tried to transport and possibly sell cars as she had previously done in Midland, Texas. In Midland, she had been a title clerk for various car dealers and also transported cars from Midland to the Albuquerque auction and various dealers, including Galles for show prior to auction. She received $75.00 per car for each vehicle transported.

Because she was unemployed, plaintiff was seeking to generate an income in Albuquerque by transporting and/or selling cars obtained in Midland or other places and taken to Albuquerque. Her affidavit continued: "It was in this context that decedent wanted to speak with me on April 30, 1976. Specifically, he was interested in having me obtain pickup trucks in Midland and bring them to Albuquerque since he said they sold well at Galles in Albuquerque. He came to my home on April 30, 1976 to discuss the matter and we entered his car as I remembered to look at some cars that a bank on Fourth or Fifth or one of those streets was going to sell. I have no recollection of what transpired after that."

Plaintiff stated that she became acquainted with decedent in late 1972 or 1973 while she was a title clerk in Midland. She talked with decedent about four times between the time she met him and the time of the accident.

■ Plaintiff did not meet the burden placed upon her to create a genuine issue of material fact as to decedent's scope of employment. The events that occurred between the time she entered decedent's car and 6:15 p. m., the time of the accident, faded from memory. This was the crucial period from which to create a genuine issue of material fact. There is not a scintilla of evidence that when plaintiff entered decedent's car, plaintiff and decedent went "prospecting." Neither is there a scintilla of evidence that decedent was acting within the scope of his employment at the time of the accident.

Plaintiff filed her complaint on April 27, 1979, three days short of the three year limitation period. Section 37–1–8, N.M.S.A. 1978. After the passage of three years, memories of witnesses usually fade and become uncertain.

Plaintiff claims that "It is certainly reasonable to infer that their pursuit of vehicles which Galles might purchase was in fact 'prospecting'; an action which Galles expressly permitted. As such, Mr. Ronquillo was using his vehicle in a manner foreseeable to and expressly permitted by Galles Chevrolet."

In effect, plaintiff asks us to infer, absent any evidence, that from 2:30 p. m. to 6:15 p. m., a period bordering on four hours, plaintiff and decedent were searching for cars that Galles might purchase. The "inference" concept has often been offered by parties as an escape hatch beginning with *Stambaugh v. Hayes*, 44 N.M. 443, 103 P.2d 640 (1940). This concept does not assist plaintiff. The evidence is undisputed that the decedent was officially off-duty at 1:00 p. m. April 30, 1976. At 2:30 p. m. we will assume that decedent picked up plaintiff to "prospect" for cars on Fourth or Fifth. To establish the "inference" concept that decedent was furthering Galles' business from 2:30 to 6:15 p. m. when the tragic accident occurred, plaintiff must point to some facts during the interim period from which such a logical and reasonable deduction can be made. Plaintiff pointed to none and we can find none.

Plaintiff claims the fact that the accident did not occur on decedent's way home from work is immaterial. Absent any evidence

that decedent was furthering Galles' business, it is material. It means that decedent had no authority to drive the Galles car unless he used it to return home.

Plaintiff attacks the competency of the evidence that decedent was travelling at 100 mph; that affidavits of a state police officer and decedent's wife were not based upon personal knowledge. These affidavits which included the police officer's official report, were based upon the written statement of two eyewitnesses who were travelling north at the time of the tragic event. The affidavits as to speed were not based upon personal knowledge and would not be admissible in evidence as provided by Rule 56(e) of the Rules of Civil Procedure; provided, however, that objections were made to the admissibility of the evidence.

Rule 56(e) reads in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

■ This language is mandatory in nature but it does not provide that inadequate or defective affidavits shall not be considered by the trial court. It is likened unto the presentation of testimony at trial. If a witness is incompetent to testify from personal knowledge as to relevant facts, the testimony is admissible if no objection is made nor any motion is made to strike the testimony. The trial court does not sit as an advocate, object to its admission and deny its admission. It may call the incompetency of the testimony to the attention of the opposing lawyer. If the issue is presented to the court by an opposing lawyer, the trial court must resolve the issue.

■ This procedure applies when affidavits are presented to the trial court. The affidavits need not contain any affirmative showing of admissibility. Before the issue can be resolved, the lawyer resisting the motion for summary judgment must take some action toward raising the issue. Then ". . . the threshold issue of admissibil-

ity must be resolved before determining whether or not unresolved questions of fact exist." *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1157 (5th Cir. 1977). A party must move to strike an affidavit that violates Rule 56(e). *Lacey v. Lumber Mut. Fire Ins. Co. of Boston*, 554 F.2d 1204 (1st Cir. 1977). We have held that an affidavit is subject to a motion to strike. *Carter v. Burn Construction Company, Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973); 6 Moore's Federal Practice, § 56.22[1], p. 56–1330 (Part 2, 1980). "[I]f counsel do not object to inadmissable matters the court may consider them on the motion for summary judgment." (Id. 56–1331—1332). Although an issue might arise whether speed relates to scope of employment, extremely excessive speed may be considered along with other facts and circumstances that bear upon the issue. There are many factors that may cause a person to speed to death. But to operate an automobile at 100 mph while "prospecting" does not comport with furthering an employer's business.

Plaintiff also attacks the competency of the evidence presented that decedent was intoxicated. In her second claim for relief, plaintiff alleged that the incident causing decedent's death was foreseeable because decedent had been previously intoxicated while driving an automobile, a fact known to Galles. This allegation appears to be an admission of intoxication while driving at the time of his death. Furthermore, the affidavit of the chief medical investigator for the State had attached to it a post mortem report and report of a toxicologist that established intoxication. No objections were made to this affidavit nor the affidavits of the state police officer and decedent's wife. Driving 100 mph while intoxicated does not comport with furthering the business of Galles.

We hold that decedent was not acting within the scope of his employment at the time of the accident in which plaintiff was injured. Galles was entitled to summary judgment. *Fernandez v. Lloyd McKee Motors, Inc.*, 90 N.M. 433, 564 P.2d 997 (Ct. App.1977); *Barela v. DeBaca*, 68 N.M. 104,

359 P.2d 138 (1961); *Miller v. Hoefgen*, 51 N.M. 319, 183 P.2d 850 (1947).

Affirmed.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.