906 P.2d 754

**Margaret "Darby" LONG,
Plaintiff–Appellee,**

**v.**

**Peter ALLEN, Defendant–Appellant.**

**No. 16443.**

Court of Appeals of New Mexico.

Sept. 15, 1995.

Opinion Denying Rehearing Oct. 19, 1995.

Linda G. Hemphill, Santa Fe, for Plaintiff–Appellee.

Peter B. Shoenfeld, Peter B. Shoenfeld, P.A., Santa Fe, for Defendant–Appellant.

## OPINION

BUSTAMANTE, Judge.

Defendant Allen (hereafter Seller) appeals from an order of summary judgment in favor of Plaintiff Long (hereafter Buyer) in an action for breach of a residential purchase agreement. Determining there were no genuine issues of material fact, the trial court found the purchase agreement enforceable and granted Buyer's motion to compel arbitration pursuant to the purchase agreement. Judgment was entered against Seller and his former wife, co-owners of the property at issue. Only Seller has appealed. We affirm.

## DISCUSSION

Buyer made several offers to Seller and his former wife (collectively, Owners) to purchase their residence. Ultimately, Buyer made a written offer dated March 1, 1994, that was set to expire on March 3, 1994, at 6:00 p.m. unless the Owners delivered a written acceptance to Buyer before that time. The Owners signed the offer (the Agreement) on March 4, 1994, and returned it to Buyer on that date via her real estate agent. Both parties acknowledge that the Owners' execution of the Agreement on March 4 constituted a counteroffer. They dispute, however, whether uncontroverted facts establish that Buyer's performance constituted an "acceptance" that bound the Owners to the terms of the counteroffer.

The ultimate question of whether the Owners' counteroffer became a binding promise and resulted in a contract requires us to consider whether the evidentiary facts conclusively establish that Buyer accepted the counteroffer. *See Orcutt v. S & L Paint Contractors, Ltd.,* 109 N.M. 796, 798, 791 P.2d 71, 73 (Ct.App.1990) (offeree's acceptance must be clear, positive, and unambiguous). Acceptance of an offer is a manifestation of assent to the terms of the offer, made by the offeree, in a manner allowed, invited, or required by the offer. *Id.* (citing Restatement (Second) of Contracts § 50 (1981)).

Seller initially contends that the specific terms of the Owners' counteroffer required a written acceptance. Seller refers us to paragraph 4.11 of the Agreement which states that "[a]ll notices and communications required or permitted under this Agreement shall be in *writing*." Paragraph 4.11 is a general provision which describes the mechanics for giving notice "required or permitted under this Agreement," including addresses and facsimile telephone numbers. The paragraph also defines the effective time of notices depending on the method of delivery. The paragraph does not on its face address the manner of acceptance or time within which acceptance of the counteroffer is required. We believe that the act of acceptance of the counteroffer is not a communication *under* the document as provided in paragraph 4.11. Rather, acceptance is an act *creating* an agreement. The Agreement does not otherwise address in any way Buyer's mode of response and, in our view, simply does not specify that the counteroffer can

only be accepted in writing. The counteroffer thus invited acceptance by any manner reasonable under the circumstances, such as by promise or performance. *See* Restatement, *supra,* § 30(2) (form of acceptance invited) and § 32 (in case of doubt, offeree may accept by promise or performance).

■ The fact that the transaction involved the sale of land and thus was within the statute of frauds does not persuade us by itself that a written acceptance was required. The Agreement, already signed by Buyer on March 1, identified each party and the subject land and also specified the pertinent terms and conditions of the transaction. *See Pitek v. McGuire,* 51 N.M. 364, 371, 184 P.2d 647, 651–52 (1947). Seller suggests that Buyer's actions were not the type of partial performance which would take the transaction out of the statute of frauds. We disagree. The Agreement satisfied the requirements set forth in *Pitek,* and Seller, the party to be charged in this case, signed the document. Nothing more is required to satisfy the statute of frauds. *See id.; Balboa Constr. Co. v. Golden,* 97 N.M. 299, 303, 639 P.2d 586, 590 (Ct.App.1981); Restatement, *supra,* § 131.

■ We turn next to the facts bearing on the issue of Buyer's acceptance of the counteroffer by her performance. To the extent the pertinent facts are not in dispute and all that remains is the legal effect of those facts, summary judgment is appropriate. *See Westgate Families v. County Clerk,* 100 N.M. 146, 148, 667 P.2d 453, 455 (1983). The following facts are undisputed. Paragraphs 1.4(A) and 1.9 of the Agreement required Buyer to deliver a $5,000 earnest-money deposit to a named title company as soon as practical. The check was received by the title company on March 8, 1994. Buyer arranged for professional inspections of the property as urged in paragraph 2.5 of the Agreement. Pursuant to paragraph 2.1 of the Agreement, Buyer sought and obtained a financing commitment for her purchase of the property. Paragraph 1.10 specified that the closing take place within ten business days of April 8, 1994, and that the parties arrange for delivery and execution of the necessary documents and funds. Buyer appeared at the title company office on April 14, 1994, and signed all the documents necessary to close the transaction. In our view, these facts establish conclusively that Buyer accepted the Owners' counteroffer by performance of what the counteroffer requested. *See* Restatement, *supra,* § 62 (where offer invites offeree to choose between acceptance by promise and acceptance by performance, beginning of invited performance is an acceptance by performance).

■ We recognize that Seller's affidavit states he never received any communication from Buyer specifically claiming or purporting to accept the counteroffer. However, the fact that Buyer may not have communicated her verbal or written promissory acceptance explicitly is not fatal to Buyer's position. The Restatement makes it clear that notification to the offeror of acceptance is not necessary unless the offer requests notice or the offeree has reason to know the offeror has no adequate means of learning of the performance with reasonable promptness and certainty. Restatement, *supra,* § 54. We have already determined the offer did not require any particular form of acceptance. Further, Seller does not assert and has made no showing that he had no means of learning about Buyer's acceptance. Most tellingly, however, it cannot be disputed that Seller had actual notice of Buyer's acceptance.

The following facts are undisputed. On March 9, 1994, at Seller's request, Buyer's real estate agent faxed a copy of the Agreement to Seller's attorney. The cover sheet for the fax included the statement, "We are moving very fast to get everything done." Seller directed Buyer's agent to deliver Buyer's earnest-money-deposit check to the title company and Seller knew the check was delivered. Seller was kept informed regarding property inspections and Buyer's efforts to secure financing. Seller was aware that Buyer's real estate agent arranged for a survey of the property at the Owners' expense. Seller arranged for the April 14, 1994, closing appointment at the title company. Buyer was not aware of any obstacle to closing the purchase until she appeared at the title company to sign closing documents. These facts conclusively establish that Seller

was aware in the normal course of business of Buyer's acceptance by performance.

## ISSUES DECIDED SUMMARILY

We dispose summarily of several of Seller's contentions. First, because we hold that the evidence establishes as a matter of law that Buyer accepted the Owners' counteroffer by her performance, it is unnecessary to address the parties' contentions regarding whether the doctrines of ratification, waiver, or estoppel precluded Seller from asserting that the March 4 acceptance of Buyer's offer was untimely.

■ Second, Seller suggests that the trial court's ruling was in error because Buyer never made a proper motion for summary judgment. We reject this claim for the following reasons: Buyer's reply affidavit opposed Seller's motion for summary judgment and sought an award of summary judgment in her favor. Buyer's memorandum brief filed on August 29, 1994, was in part denominated as being "in support of her cross-motion for summary judgment," and the pleading contained a statement of the reasons in support of the motion and cited the authorities upon which she relied. *See* SCRA 1986, 1–056(D)(2) (Repl.1992) (procedure for moving for summary judgment). Seller has not pointed out how he presented to the trial court any question of defects in Buyer's pleadings. *Cf.* SCRA 1986, 12–213(A)(3) (Cum.Supp.1995) (argument in brief in chief shall show how issue was preserved). We will not consider this claim for the first time on appeal. *See* SCRA 1986, 12–216(A) (Cum.Supp.1995) (to preserve question for review it must appear that ruling was invoked below).

Third, Seller argues that the statement in Buyer's affidavit that she "entered into a valid contract with Defendants" on March 4 is a conclusion of law beyond Buyer's competence. We address this contention only to note that the trial court was not required to rely on Buyer's statement as proof of the existence of a binding contract.

■ Finally, the Seller contends that the affidavits from the building inspector and escrow agent are not appropriately part of the record since they were not filed in the district court and because conformed copies were not provided to Seller. We reject these contentions. The affidavits are part of the record proper because there were filed with the document entitled "[B]uyer Long's Reply to [S]eller Allen's Reply." We are aware of no authority to support the proposition that Buyer was required to provide him with conformed copies of the affidavits. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (arguments unsupported by citations to authority will not be reviewed). Seller has also not demonstrated that he asked the trial court to strike the affidavits because of the form of the copies of the affidavits he received. *Cf.* SCRA 12–213(A)(3) and SCRA 12–216(A); *Chavez v. Ronquillo*, 94 N.M. 442, 445, 612 P.2d 234, 237 (Ct.App.1980) (objecting party must move to strike an affidavit that violates SCRA 1–056).

## CONCLUSION

We hold as a matter of law that Buyer accepted the counteroffer by performance, thus making the Owners' promises binding. *See* SCRA 1–056(C); *Worley v. United States Borax & Chem. Corp.*, 78 N.M. 112, 114, 428 P.2d 651, 653 (1967). Accordingly, we affirm the trial court's order of summary judgment for Buyer.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.

### OPINION ON REHEARING

This matter came before the original panel on the motion for rehearing of Defendant Allen (Seller). Seller asserts that paragraph 1.7 of the Agreement required Buyer to accept Seller's counteroffer in writing, and that any other form of acceptance was thus ineffective. Paragraph 1.7 provided in pertinent part:

> This offer shall expire unless written acceptance is delivered to BUYER on or before ... 6:00 PM Mountain Time, Thursday, March 3, 1994. It is acknowledged that this offer to purchase may be withdrawn at any time prior to BUYER'S written receipt of acceptance by SELLER and

that SELLER may accept other offers prior to acceptance of this offer." Emphasis added.

We are not persuaded. On its face, paragraph 1.7 does not require Buyer to accept Seller's counteroffer in writing. Rather, it addresses how Seller must communicate acceptance. Thus, the specific terms of the Agreement do not require written acceptance of the counteroffer by Buyer.

The remaining issue is whether paragraph 1.7 requires as a general matter that any acceptance in this transaction be in writing. We do not believe it does. Seller signed and returned the Agreement to Buyer late but without modification. Thus, Seller's counteroffer was for sale on the same terms previously offered by Buyer. The parties retained their identities as Buyer and Seller under the Agreement. Given the sequence of events, paragraph 1.7 became essentially surplusage to the counteroffer. It did not operate to provide an over-arching limit on Buyer's mode of acceptance any more than paragraph 4.11.

Seller's citation to *Polhamus v. Roberts*, 50 N.M. 236, 175 P.2d 196 (1946) is inapposite. The factual circumstances of *Polhamus* are so different from the case at hand that the analogy Seller attempts to draw is not accurate.

The motion for rehearing is denied.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.