2003-NMCA-148

81 P.3d 573

**Ronald DeARMOND, Plaintiff–Appellant,**

v.

**HALLIBURTON ENERGY SERVICES, INC., Defendant–Appellee.**

No. 22802.

Court of Appeals of New Mexico.

Sept. 25, 2003.

Certiorari Granted, No. 28,366, Dec. 9, 2003.

Hannah B. Best, Hannah Best & Associates, Albuquerque, for Appellant.

Robert L. Ivey, Vinson & Elkins, L.L.P., Houston, TX, Stanley Kotovsky, Hinkle, Hensley, Shanor & Martin, L.L.P., Albuquerque, for Appellee.

## OPINION

CASTILLO, J.

{1} In this case, we decide whether the trial court correctly determined that Plaintiff Ronald DeArmond (DeArmond) and Defendant Halliburton Energy Services, Inc., (Halliburton) entered into a valid contract agreeing to arbitrate work-related problems, thus waiving any right to a jury trial on these issues. We hold that the record is not sufficient to support the trial court's decision, and we therefore reverse the trial court's order granting Halliburton's motion to compel arbitration. We remand for reconsideration of Halliburton's motion.

## I. BACKGROUND

{2} DeArmond was employed by Halliburton as a senior equipment operator. In

November 1998, he was injured on the job; and as a result, he needed surgery to correct a torn pectoral muscle. DeArmond requested the necessary leave from Halliburton. In January 1999, Halliburton laid DeArmond off, and his health benefits were terminated.

{3} DeArmond sued Halliburton on February 2, 2000, in state district court. The suit alleged (1) discrimination based on race and medical condition in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to –17 (2000), and the New Mexico Human Rights Act, NMSA 1978, §§ 28–1–10 to –15 (1969, as amended through 1995); (2) breach of implied employment contract; and (3) abusive discharge. Halliburton removed the case to federal court on April 18, 2000. DeArmond amended his complaint to dismiss the federal claim and secured a remand to state district court on September 19, 2000. On August 14, 2001, Halliburton filed its motion to compel arbitration, asserting that its arbitration agreement with DeArmond was enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (2000), and, alternatively, the New Mexico Uniform Arbitration Act, NMSA 1978, §§ 44–7–1 to –22 (1971) (Act). Although DeArmond requested a hearing, the trial court made its decision based on the pleadings and affidavits without entering specific findings of fact. The trial court did not address the question of whether the agreement was governed by the federal and/or state arbitration statutes.

## II. DISCUSSION

### A. Standard of Review

{4} The trial court held no evidentiary hearing and made no findings or conclusions; therefore, it appears the trial court determined as a matter of law that an agreement to arbitrate existed. In this regard, the court's order compelling arbitration was similar in nature to a grant of a summary judgment motion. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3rd Cir.1980). As with a summary judgment motion, a motion to compel arbitration may only be granted as a matter of law when there is no genuine issue of material fact as to the existence of an agreement.

*Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir.1997). Only when there is no genuine issue of fact concerning the formation of an arbitration agreement should the court decide the existence of the agreement as a matter of law. *Par–Knit Mills, Inc.*, 636 F.2d at 54. "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* We review de novo the grant of the motion to compel arbitration in the same manner we would review a grant of a summary judgment motion. *See Avedon Eng'g, Inc.*, 126 F.3d at 1283; *Campbell v. Millennium Ventures, LLC*, 2002–NMCA–101, ¶¶ 13–14, 132 N.M. 733, 55 P.3d 429 (reviewing de novo trial court's order granting summary judgment and compelling arbitration). We may reverse the order to compel arbitration if we determine that there are genuine issues of material fact as to whether an agreement to arbitrate exists. *See Par–Knit Mills, Inc.*, 636 F.2d at 55.

### B. The Arbitration Agreement

{5} In late 1997, Halliburton adopted a company-wide Dispute Resolution Program (DRP) with an effective date of January 1, 1998. Thereafter, in November 1997, Halliburton mailed a notice of the DRP to all employees at their addresses of record. The mailing included a memorandum, a twenty-two-page Plan Document, the DRP Rules, a summary brochure, and a cover letter of explanation. The cover letter stated that "[t]he Halliburton Dispute Resolution Program binds the employee and the Company to handle workplace problems through a series of measures designed to bring timely resolution." The memorandum further explained that as of January 1, 1998, all "Halliburton employee disputes" would be referred through the DRP for resolution, that both Halliburton and DeArmond would be bound by the agreement, and that "[y]our decision to ... continue your current employment after January 1, 1998 means you have agreed to and are bound by the terms of this Pro-

gram as contained in the Plan Document and Rules (all enclosed)." DeArmond continued employment after January 1, 1998.

{6} Halliburton, on appeal, drops its alternative argument that the DRP is enforceable under the Act. Since DeArmond neither contests application of the FAA nor argues for application of the Act, we proceed under the assumption that the FAA governs.

{7} A primary purpose of the FAA is to require courts to compel arbitration in cases where the parties agree to arbitrate; the law was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA applies in state as well as federal courts, *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 684, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), and provides that

[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Id.* at 24–25, 103 S.Ct. 927; *Gilmer,* 500 U.S. at 25, 111 S.Ct. 1647.

{8} However, a legally enforceable contract is still a prerequisite for arbitration; without such a contract, parties will not be forced to arbitrate. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement); *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (internal quotation marks and citation omitted)); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."); *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002) ("The presumption in favor of arbitration ... disappears when the parties dispute the existence of a valid arbitration agreement."); *Avedon Eng'g, Inc.,* 126 F.3d at 1286 ("[T]he FAA was not enacted to force parties to arbitrate in the absence of an agreement.").

{9} Whether a valid contract to arbitrate exists is a question of state contract law. *First Options of Chicago, Inc.,* 514 U.S. at 944–45, 115 S.Ct. 1920; *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Avedon Eng'g, Inc.,* 126 F.3d at 1286–87; *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 797 (10th Cir.1995). States may not subject an arbitration agreement to requirements that are more stringent than those governing the formation of other contracts. *Doctor's Assocs.,* 517 U.S. at 687, 116 S.Ct. 1652. For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent. *Garcia v. Middle Rio Grande Conservancy Dist.,* 1996–NMSC–029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted); *Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 669, 857 P.2d 776, 780 (1993); UJI 13–801 NMRA 2003 (defining contract). "The general rule in contract actions is that the burden of proof is on the party seeking to prove the existence of a fact." *Newcum v. Lawson,* 101 N.M. 448, 454, 684 P.2d 534, 540 (Ct.App.1984); *Camino Real Mobile Home Park P'ship v. Wolfe,* 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995).

{10} DeArmond contends that Halliburton has not proven the existence of a valid, enforceable agreement to arbitrate. Specifically, he argues that three elements essential to a contract are missing: acceptance, consideration, and mutual assent. We agree that there is an absence of proof of acceptance and mutuality; we therefore need not address DeArmond's arguments concerning consideration.

### 1. Acceptance

{11} A pivotal issue in this case is whether DeArmond accepted the modification of his existing employment contract when he continued to work after January 1, 1998. Acceptance of an agreement is essential for the agreement to be binding. *Medina v. Sunstate Realty, Inc.,* 119 N.M. 136, 139, 889 P.2d 171, 174 (1995); *Orcutt v. S & L Paint Contractors, Ltd.,* 109 N.M. 796, 798, 791 P.2d 71, 73 (Ct.App.1990). Acceptance must be "clear, positive, and unambiguous." *Id.; Tatsch v. Hamilton–Erickson Mfg. Co.,* 76 N.M. 729, 733, 418 P.2d 187, 189 (1966); *Ross v. Ringsby,* 94 N.M. 614, 617, 614 P.2d 26, 29 (Ct.App.1980). A party's acceptance of a written offer may be express or implied by conduct. *Medina,* 119 N.M. at 139, 889 P.2d at 174; *Long v. Allen,* 120 N.M. 763, 764–65, 906 P.2d 754, 755–56 (Ct.App.1995); *Orcutt,* 109 N.M. at 798–99, 791 P.2d at 73–74; Restatement (Second) of Contracts § 19 (1981). Where the offer invites acceptance through performance, rather than in writing, the beginning of invited performance is an implied acceptance. *Long,* 120 N.M. at 765, 906 P.2d at 756. Halliburton invited acceptance through performance by informing employees in the DRP memorandum that "[y]our decision to ... continue your current employment after January 1, 1998 means you have agreed to and are bound by the terms of this Program."

{12} Halliburton urges us to apply our holding in *Stieber v. Journal Publ'g Co.,* 120 N.M. 270, 273, 901 P.2d 201, 204, and to conclude that DeArmond accepted arbitration by continuing to work after January 1, 1998. In *Stieber,* this Court applied the principle of implied acceptance to an at-will employment contract. We held that the terms of employment may be modified prospectively as a condition of continued employment and that an employee may accept the proposed modifications by continued employment. *Stieber,* 120 N.M. at 273, 901 P.2d at 204. The modifications in *Stieber* concerned job assignments that an employer gave to an employee; the employee objected to the assignments but performed them, which she claimed effectively demoted her. *Id.* at 272, 901 P.2d at 203.

{13} There is a critical distinction between *Stieber* and this case. In *Stieber,* there was no question that the employee had knowledge of the change in job assignments. Therefore, *Stieber* does not stand for the proposition that a prospective modification of an at-will employment contract may be accepted by continued employment when the employee does not have actual knowledge of the offer.

{14} The question, therefore, is whether DeArmond had actual knowledge of Halliburton's offer and Halliburton's invitation that the offer be accepted by performance. DeArmond argues that Halliburton has not shown that DeArmond received the DRP materials or that he read or understood their contents. We observe that Halliburton did not provide an arbitration agreement for DeArmond to sign, nor is there an acknowledgment form indicating that he received or read the documents. DeArmond's argument is, in essence, that without a showing that he knew about the proposed new contract terms, there can be no proof that he accepted the offer. We agree.

{15} Halliburton correctly asserts that under New Mexico law, materials mailed to a correct address are presumed to have been received. *Garmond v. Kinney,* 91 N.M. 646, 647, 579 P.2d 178, 179 (1978). While receipt may be presumed, we are unwilling under the facts of the case to equate presumed receipt with actual knowledge of the offer. The record leaves us unable to ascertain whether DeArmond saw the envelope, opened it, and read it or whether DeArmond was otherwise conscious of the fact that remaining on the job would be construed as acceptance of an arbitration agreement.

{16} Without citing authority, Halliburton further suggests it is entitled to presume employees read the materials sent to them. New Mexico law does impose a duty upon the parties to a contract to read and familiarize themselves with its contents before they sign and deliver it. *Ballard v. Chavez,* 117 N.M. 1, 3, 868 P.2d 646, 648 (1994); *Smith v. Price's Creameries,* 98 N.M. 541, 545, 650 P.2d 825, 829 (1982). However, that presumption is inapplicable to this case, where there is no signed contract.

{17} We base our analysis on general contract law. A trier of fact must first be able to determine that the party performing an act was aware of the offer and aware that his conduct could constitute acceptance. Restatement § 19(2) ("The conduct of a party is not effective as a manifestation of his assent unless he ... knows or has reason to know that the other party may infer from his conduct that he assents."); 1 Arthur Linton Corbin & Joseph M. Perillo, *Corbin on Contracts* § 3.5, at 326–28 (rev. ed. 1993 & Supp.2003) (discussing knowledge of the offer as a prerequisite to acceptance and stating that the prerequisite "is quite logical and is consistent with the assumption that 'contract' requires conscious assent to terms proposed by another."). We recognize that the type and extent of knowledge required varies, depending on the context. *See, e.g., In re Estate of Duran,* 2003–NMSC–008, ¶ 17, 133 N.M. 553, 66 P.3d 326 (stating that, generally, notice of an adverse possession claim between cotenants must be an open and unequivocal denial of the title and right to possession by one cotenant to the other); *Collins v. Big Four Paving, Inc.,* 77 N.M. 380, 383, 423 P.2d 418, 420 (1967) (determining that under the worker compensation statute, the purpose of which is to allow employers to investigate accidents, actual knowledge sufficient to overcome the requirement for written notice is not necessarily firsthand knowledge but is knowledge "sufficient to impress a reasonable man" that an accident or compensable injury has occurred); *Jones v. Minn. Mining & Mfg. Co.,* 100 N.M. 268, 274, 669 P.2d 744, 750 (Ct.App.1983) (defining actual knowledge in a duty to warn tort case as knowledge of the nature and extent of the danger of excessive radiation dosages).

In this case, we need to consider the purpose of the knowledge requirement for an offer: that there was a conscious assent to the offer and a meeting of the minds as to the terms of the offer.

{18} We believe the principle of conscious assent is particularly crucial in the at-will employment context, where acceptance may be manifested by continuing in a routine activity. In order to ascertain whether the employee consciously assented by continuing to work, there must be proof that the employee actually knew of the offer and was aware that remaining on the job constituted acceptance. *See National Rifle Ass'n v. Ailes,* 428 A.2d 816, 822 (D.C.1981) ("[W]ithout the employee's express agreement to be bound by a change in [an employment] policy, the employer must prove that the employee's knowledge of the change was complete enough for the trier of fact to find, in fairness, that the employee's decision to remain on the job was premised on acceptance of the new policy."). Lack of knowledge of the modified terms precludes the formation of a new contract. To suggest otherwise, particularly when an employee is waiving a fundamental right to a jury trial through an arbitration agreement, offends a basic notion of fairness.

{19} We are aware of at least two other jurisdictions that have held Halliburton employees bound to arbitration agreements when the employees continued to work after receiving DRP materials in the mail. *In re Halliburton Co.,* 80 S.W.3d 566, 569 (Tex. 2002); *Cole v. Halliburton Co.,* No. CIV–00–0862–T, 2000 WL 1531614, at **1, 2 (W.D.Okla. Sept.6, 2000). These jurisdictions, like New Mexico, imply acceptance of prospective modifications in terms of employment when at-will employees remain on the job. *Id.* Those cases, however, are distinguishable. In one, the employee acknowledged looking at the DRP materials, albeit briefly. *In re Halliburton Co.,* 80 S.W.3d at 568–69. Based on this acknowledgment, the court was satisfied that the employee had knowledge of the changes to the at-will employment contract when he continued to work after January 1, 1998. *Id.* Similarly, in the second case, the employee admitted he received certain of the DRP materials, such

that the court was able to conclude from the record that the employee had actual notice of the program and knew that his continued employment bound him to the arbitration agreement. *Cole*, 2000 WL 1531614, at **1, 2. There is no such acknowledgment or admission in this case, nor does the record otherwise demonstrate that DeArmond knew that continued work after January 1, 1998, would bind him to the agreement.

### 2. Mutual Assent

 {20} In addition to the absence of proof as to acceptance, the record reveals a lack of proof as to mutuality. A binding contract requires mutual assent. *Garcia*, 1996–NMSC–029, ¶ 9, 121 N.M. 728, 918 P.2d 7. Parties can be said to mutually assent to a contract when they have the same understanding of the contract's terms; where they attach materially different meanings to the terms, there is no meeting of the minds. *See United Water N.M., Inc. v. N.M. Pub. Util. Comm'n*, 1996–NMSC–007, 121 N.M. 272, 276, 910 P.2d 906, 910; *Pope v. The Gap, Inc.*, 1998–NMCA–103, ¶¶ 11–12, 125 N.M. 376, 961 P.2d 1283. Without proof that DeArmond knew of the offer, it is impossible to conclude that there was a meeting of the minds as to the terms of the offer. *See* Restatement § 53 cmt. c at 135 ("The offeree's conduct ordinarily constitutes an acceptance ... only if he knows of the offer."). In the absence of evidence in the record of a meeting of the minds, the trial court could not find that there was mutual assent.

 {21} Halliburton contends that if we determine DeArmond did not accept the arbitration agreement by his continued employment, we will eviscerate New Mexico's at-will employment doctrine. We disagree. Our holding in *Stieber* stands: An employer may still insist on prospective changes in the terms of employment as a condition of continued employment. Continued employment, however, will not constitute acceptance, unless the employer proves that the employee actually knew of the modification. In *Stieber*, actual knowledge of the prospective modification was not an issue because there was no question that the employee knew of the modification in job assignments and was challenging the employer's right to make the modification.

{22} Halliburton also urges us to reject a "heightened 'knowing and voluntary' standard for a party's waiver of jury trial in favor of arbitration[.]" Because Halliburton has not proven that DeArmond even knew of the arbitration agreement, we do not consider this issue.

### III. PROCEDURE

{23} We consider the trial court's order as similar to the grant of a summary judgment motion on this issue. Accordingly, we reverse the trial court's grant of Halliburton's motion to compel arbitration, and we remand for the trial court to consider the matter in light of our clarification that Halliburton must prove DeArmond had actual knowledge of the offer to arbitrate and of Halliburton's invitation to accept the offer by continued employment. Because the resolution of DeArmond's other issues regarding lack of consideration and waiver must wait for a determination of this preliminary issue, we direct the trial court to address these remaining issues as necessary.

{24} **IT IS SO ORDERED.**

BUSTAMANTE and FRY, JJ., concur.