This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38903

**PATRICIA J. MADRID,**

Plaintiff-Appellant,

v.

**MADRID ENTERPRISES, INC.
and GERALD MADRID,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Carl J. Butkus, District Judge**

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

Clinton W. Marrs
Albuquerque, NM

for Appellant

The Allison Law Firm, P.C.
Michael Allison
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Plaintiff Patricia Madrid appeals the district court's order granting Gerald Madrid and Madrid Enterprises, Inc.'s (collectively, Defendants) motion to enforce a settlement agreement reached at mediation. Plaintiff argues the district court erred by (1) ruling on

the motion without holding an evidentiary hearing or trial on the issue, and (2) concluding that a valid settlement agreement existed. We affirm.

**BACKGROUND**

**{2}**     The settlement agreement at issue arises from a lawsuit related to Plaintiff and Mr. Madrid's interests in certain family businesses. Plaintiff sued Defendants asserting various claims, including breach of contract and failure to pay a promissory note. Defendants asserted various counterclaims, including conversion of funds.

**{3}**     The district court ordered the parties to mediation. It is undisputed that the parties believed they reached a settlement agreement at the mediation, but that the mediation ended abruptly—before the agreement could be reduced to writing—when Plaintiff and Mr. Madrid were notified their father had taken ill and was being admitted to the hospital. Following the mediation, the district court vacated the parties' trial setting based on the parties' report that they had reached a settlement.

**{4}**     Plaintiff later disputed certain terms included in a written draft of the settlement agreement prepared by defense counsel, and Defendants moved to enforce the settlement agreement they believed was reached at the mediation. The parties briefed the issue in the district court and submitted exhibits providing factual support for their arguments. The district court held two hearings at which it heard arguments of counsel and considered the parties' exhibits. The district court ultimately granted Defendants' motion to enforce the settlement agreement they claimed was reached at mediation. Plaintiff appeals.

**{5}**     We reserve further discussion of the facts for our analysis below.

**I.      The District Court Did Not Err in Ruling on Defendants' Motion Without Holding an Evidentiary Hearing or Trial on the Issue**

**{6}**     Plaintiff argues the district court erred by ruling on Defendants' motion to enforce the settlement agreement without holding an evidentiary hearing or trial on the issue. Relatedly, Plaintiff contends the district court was required to apply a summary judgment standard in ruling on the motion. Citing *DeArmond v. Halliburton Energy Services, Inc.*, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573, Plaintiff argues that where, as here, the district court holds no evidentiary hearing and appears to have determined as a matter of law that an agreement existed, the order is similar in nature to a grant of a summary judgment motion. Thus, Plaintiff argues, the motion may only be granted when no genuine issue of material fact exists; where, as here, disputed issues of material fact exist, Plaintiff contends the district court was required to give the opposing party the benefit of all reasonable doubts and inferences and treat all of the nonmovants assertions as true. We are not persuaded *DeArmond* is controlling under the circumstances of this case.

**{7}** In *DeArmond*, this Court stated that the district court's order granting the defendant's motion to compel arbitration was "similar in nature to a grant of a summary judgment motion." *Id.* This Court reasoned that the "[t]he [district] court held no evidentiary hearing and made no findings or conclusions; therefore, it appears the [district] court determined as a matter of law that an agreement to arbitrate existed." *Id.*

**{8}** Here, by contrast, the district court made findings and conclusions after reviewing the evidence in the record. Moreover, at the second hearing, after the district court had the opportunity to review the evidence in the record—which included sworn statements of the parties and their counsel, written documentation concerning the parties' understanding of the agreement's terms, and written communications concerning the terms of the agreement between counsel following the mediation—Plaintiff's counsel represented to the district court that all the evidence the court needed to rule on the motion was already in the record and conceded that one possible outcome would be that the court decide the motion without an evidentiary hearing, leaving the parties to live with the decision. Thus, even if we were to assume the district court erred in failing to hold an evidentiary hearing, in light of Plaintiff's counsel's representations, any error was invited. *See State ex rel. State Eng'r v. United States*, 2018-NMCA-053, ¶ 36, 425 P.3d 723 ("It is well established that a party may not invite error and then proceed to complain about it on appeal." (internal quotation marks and citation omitted)); *Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 13, 121 N.M. 258, 910 P.2d 334 ("A party who has contributed, at least in part, to perceived shortcomings in a [district] court's ruling should hardly be heard to complain about those shortcomings on appeal."). Accordingly, based on the circumstances of this case, the district court did not err in ruling on Defendants' motion based on the evidence in the record without applying the summary judgment standard or holding a separate evidentiary hearing or trial. Having so concluded, we turn now to reviewing the district court's grant of Defendants' motion to enforce the settlement agreement.

## II. The District Court Did Not Err in Granting Defendants' Motion to Enforce the Settlement Agreement

**{9}** The evidence demonstrates that the parties believed they reached a settlement agreement at the mediation, and it is undisputed that following the mediation, the district court vacated the parties' trial setting based on the parties' belief that they had reached a settlement. The parties instead disputed what they agreed to. More specifically, the parties disputed two terms of the agreement, involving income related to two assets: (1) a parking lot in which the parties had owned an interest (the Parking Lot term), and (2) the "Advanced Towing" promissory note executed by Mr. Madrid in the amount of $160,000 in which Plaintiff claimed a fifty-percent interest (the Advanced Towing promissory note).[1] Mr. Madrid stated in an affidavit that the parties agreed that he would assign to Plaintiff his twenty-five percent participation interest in cash distributions from operations of the parking lot through June 2028 and that the Advanced Towing promissory note would be forgiven. Plaintiff, in contrast, stated in a declaration that she

---

1The district court concluded that both terms are material, and the parties do not dispute this characterization.

agreed that Mr. Madrid would pay her $2,000 per month over ten years and that the Advanced Towing promissory note would remain in place. The district court granted Defendants' motion to enforce the settlement agreement, concluding that the agreement provided for forgiveness of the Advanced Towing promissory note and assignment to Plaintiff of Mr. Madrid's twenty-five percent participation interest in cash distributions from operations of the parking lot through June 2028.

**{10}** On appeal, Plaintiff argues that a valid contract did not exist because Defendants did not establish the existence of the essential elements of an enforceable settlement agreement. *See Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 28, 303 P.3d 814 ("The burden of proof is on the party asserting that a valid contract exists.").

**{11}** "The existence of a contract between parties is generally a question of law." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 22, 99 N.M. 802, 664 P.2d 1000, *overruled on other grounds by Montoya v. AKAL Sec., Inc.*, 1992-NMSC-056, ¶ 12, 114 N.M. 354, 838 P.2d 971; *Builders Cont. Interiors, Inc. v. Hi-Lo Indus., Inc.*, 2006-NMCA-053, ¶ 8, 139 N.M. 508, 134 P.3d 795 ("[A] settlement agreement is a species of contract[.]"). "This Court reviews questions of law . . . de novo." *Creson v. Amoco Prod. Co.*, 2000-NMCA-081, ¶ 10, 129 N.M. 529, 10 P.3d 853. Questions of contract formation, however, potentially involve both a factual inquiry, which focuses on the words, conduct, and exchange between the parties to the contract, and a legal question, which requires the application of principles of contract law to the facts and circumstances surrounding its formation. *See Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 1998-NMCA-017, ¶ 39, 124 N.M. 549, 953 P.2d 722 ("When the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist." (alteration, internal quotation marks, and citation omitted)). "Where an issue to be determined rests upon the interpretation of documentary evidence, an appellate court is in as good a position as the [district] court to determine the facts and draw its own conclusion." *Gomez v. Jones-Wilson*, 2013-NMCA-007, ¶ 17, 294 P.3d 1269 (internal quotation marks and citation omitted).

**{12}** Central to this appeal, are disputes about the terms of the agreement reached at mediation, with each party pointing to facts and surrounding circumstances supporting its understanding of those terms. Plaintiff argues that because the parties attached entirely different understandings to the terms in question, there was no meeting of the minds and no mutual assent, and therefore a binding contract was never formed.

**{13}** "For an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 11, 125 N.M. 376, 961 P.2d 1283. "Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Id.* ¶ 13. "Mutual assent may be shown by the parties' written or spoken words, by their acts or failures to act, or some combination thereof." UJI 13-816 NMRA. Plaintiff argues there was no evidence she did, or said anything, that could be viewed as objectively manifesting assent to the terms claimed by Defendant. We disagree.

**{14}** Although each party offered support for its own understanding of the agreed-to terms, we look to whether either party put forth evidence showing that the *opposing* party—through its written or spoken words, acts or failures to act, or some combination thereof—objectively manifested assent to the terms that party now denies. *See id.*; *Pope*, 1998-NMCA-103, ¶¶ 11, 13. We conclude Defendants proffered evidence permitting the inference that Plaintiff assented to the terms as stated by Defendants.

**{15}** Following the mediation, Defendant's counsel sent Plaintiff's counsel an outline summarizing the terms of the settlement agreement and a draft of the agreement in writing. Both the outline and the written agreement include the terms Defendants claimed were agreed to: (1) forgiveness of the Advanced Towing promissory note; and (2) assignment to Plaintiff of Mr. Madrid's twenty-five percent interest in cash distributions from parking lot operations through June 2028. Neither Plaintiff nor her counsel's declaration states that they did not read the outline or the written agreement. Instead, Plaintiff's counsel sent a text message to Defendant's counsel stating, in relevant part, "Just received a note from [Plaintiff]. She's balking. Thinks cash flow numbers on [par]king lot are off. Don't know more yet. I'll speak with her, then [get] back to you."

**{16}** A permissible inference from this message is that Plaintiff agreed to forgive the Advanced Towing promissory note and acquire Mr. Madrid's twenty-five percent participation interest in cash distributions from parking lot operations through 2028. With regard to the Parking Lot term, the text message's reference to the "cash flow numbers on [par]king lot [being] off" corroborates Defendants' view of the agreement. "Cash flow" indicates an amount that is not fixed but rather fluctuates over time. The use of this phrase is thus consistent with Defendants' view that Plaintiff had agreed to a percentage of the cash distributions from the parking lot operations, rather than a fixed $2,000 monthly payment, as Plaintiff claims. As to the Advanced Towing promissory note, although the text message specifically addresses the Parking Lot term, it does not dispute forgiveness of this promissory note. Plaintiff's failure to object to forgiveness of the Advanced Towing promissory note—despite evidence indicating she and her counsel were aware of this term—permits the inference that Plaintiff had agreed to it at the mediation. *See* UJI 13-816 (stating that mutual assent may be shown by a party's failure to act). Finally, the text message's use of "balk" supports the inference that Plaintiff had agreed to these terms at the mediation but was now hesitating.

**{17}** Moreover, the actions of Plaintiff's counsel following the mediation support the inference that Plaintiff had agreed to acquire Mr. Madrid's twenty-five percent participation interest in cash distributions from the parking lot operations through 2028. *See* UJI 13-816 ("Mutual assent may be shown by the parties' . . . acts or failures to act, or some combination thereof."). A day after the February 5 mediation, defense counsel emailed the outline of the agreement, which included this term, to Plaintiff's counsel. Defense counsel resent the outline on February 14. On February 12, defense counsel prepared a draft of the agreement in writing, which likewise included the term and forwarded it to Plaintiff's counsel. Plaintiff's counsel, however, did not make any objection until February 18. After having days to review the outline and draft agreement

to ensure they conformed with what the parties had agreed to at the mediation, Plaintiff's counsel's response that his client was "balking"—rather than flatly stating that these documents did not accurately reflect the agreed-to term—permits an inference that Plaintiff had agreed to the Parking Lot term as reflected in those documents.

**{18}** Accordingly, the surrounding circumstances, as well as evidence in the form of Plaintiff's counsel's text message relaying his client's views, corroborate Defendants' view of the terms in question and permit the inference that Plaintiff had agreed to forgive the Advanced Towing promissory note and acquire Mr. Madrid's twenty-five percent participation interest in cash distributions from parking lot operations through 2028. *See Eckhardt*, 1998-NMCA-017, ¶ 39.

**{19}** In contrast, Plaintiff fails to direct us to evidence indicating that Defendants agreed to pay Plaintiff $2,000 per month for ten years and leave the Advanced Towing promissory note in place, or that Defendants were aware that these terms had been offered. Unlike the detailed outline and the draft-written settlement agreement defense counsel sent to Plaintiff's counsel, the evidence proffered by Plaintiff speaks only to her understanding of these terms.[2] *See Pope*, 1998-NMCA-103, ¶ 13 ("Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties.").

**{20}** Plaintiff nevertheless argues that the circumstances giving rise to her lawsuit indicate that she was owed substantially more than she would have received under the terms claimed by Defendants and that in light of the amount Defendants admitted owing her, there is no reason Plaintiff would have accepted $1,000 per month and forgiveness of the Advanced Towing promissory note to settle her claims. We are unpersuaded.

**{21}** As an initial matter, the outline and written settlement agreement prepared by Defendant's counsel did not provide for a fixed $1,000 per month payment to Plaintiff but rather a percentage of cash distributions from operations of the parking lot through June 2028. The brief in chief's citations to the record do not support Plaintiff's assertion that Defendants had offered Plaintiff a fixed $1,000 per month payment. To the extent Plaintiff argues she would not have accepted the terms claimed by Defendants—or that Defendants had reason to know Plaintiff would not accept such terms—this argument is speculative. Plaintiff acknowledges "the circumstances may have supported her decision to make some compromises," and we note that Defendants asserted various counterclaims against Plaintiff, including for conversion of funds, all of which would have been dismissed as part of the settlement agreement.[3]

---

2To the extent Plaintiff points to her counsel's notes from the mediation to corroborate her understanding of the settlement terms, these notes can be interpreted to support both parties' positions.

3To the extent Plaintiff claims Defendants "produced no evidence supporting the required element of consideration," Plaintiff does not point out where, in the record, this argument was preserved. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."). Even if Plaintiff had preserved this argument, however, Plaintiff does not dispute that the agreement reached at the mediation contemplated settlement of claims, which would amount to consideration. *See*

**{22}** In sum, in light of the evidence put forth by Defendants permitting the district court to infer that Plaintiff had agreed at the mediation to forgive the Advanced Towing promissory note and acquire Mr. Madrid's twenty-five percent interest in cash distributions from the parking lot operation through 2028, *see Eckhardt*, 1998-NMCA-017, ¶ 39, we cannot say Plaintiff has carried her burden on appeal to clearly demonstrate that the district court erred. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred."). Having determined that the district court did not err in concluding that a valid and enforceable settlement agreement existed providing for forgiveness of the Advanced Towing promissory note and assignment to Plaintiff of Mr. Madrid's twenty-five percent interest in the cash proceeds of the parking lot through June 2028, we conclude the district court did not err in granting Defendants' motion to enforce the settlement agreement.

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm.

**{24} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JENNIFER L. ATTREP, Judge**

---

*Ritter v. Albuquerque Gas & Elec. Co.*, 1943-NMSC-035, ¶ 19, 47 N.M. 329, 142 P.2d 919 ("No rule of law is better settled than that an agreement to forbear proceedings at law or in equity to enforce a well-founded claim is a sufficient consideration to support a promise[.]" (internal quotation marks and citation omitted)).